GREENE COUNTY CONCERNED CITIZENS, a Missouri not-for-profit corporation, et al., Appellants,

v.

BOARD OF ZONING ADJUSTMENT
OF GREENE COUNTY and City
of Springfield, Respondents.

No. 18789.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 28, 1994.

Motion for Rehearing and Transfer to Supreme Court Denied Feb. 22, 1994.

Application to Transfer Denied
April 26, 1994.

Riezman & Blitz, P.C., John E. Bardgett, Mark H. Levison, St. Louis, and Bruce E. Hunt, Springfield, for appellants.

Theodore L. Johnson, III, John W. Housley, Office of the Greene County Counselor, Springfield, for respondent Board of Zoning Adjustment of Greene County.

Miller & Sanford, P.C., Frank M. Evans, III, Daniel R. Wichmer, Springfield, for respondent City of Springfield.

CROW, Judge.

Greene County Concerned Citizens, a Missouri not-for-profit corporation, and three individuals, Sharon K. Welton, Darrell L. Proctor and Bruce W. Earnhart, brought this action as Plaintiffs in the circuit court for review of a decision by the Greene County Board of Zoning Adjustment ("Board") granting the City of Springfield ("City") a "conditional use permit" to construct and operate a materials recovery facility ("MRF") on City-owned land in an unincorporated area of Greene County.

The circuit court entered judgment affirming the Board's decision. Plaintiffs bring this appeal from that judgment. The issues presented by their five points relied on are easier addressed after an account of the pertinent facts.

The subject tract consists of 387 acres zoned "A–1 Agriculture District." The proposed MRF is to be constructed on approximately 40 acres within that tract. Documents in the massive record indicate the City intends to contract with Daneco, Inc. ("Daneco") to design, build and operate the MRF, but the City will own it.

Article V of the Greene County Zoning Regulations ("Regulations") lists the uses permitted in an "A–1 Agriculture District." At the outset, Article V states:

> Statement of Intent: This district is intended to provide for agricultural and related uses in areas where non-farm residential development is not of a significant portion and is presently not anticipated.

.   .   .   .   .

Section 1 of Article V sets forth six "Principal Permitted Uses." Section 2 of Article V sets forth sundry "Accessory Uses." Section 3 of Article V—the provision involved here—lists 16 "Conditional Uses Requiring Board of Zoning Adjustment Authorization." One of those uses appears in paragraph "(K)," which reads:

> Disposal of garbage or refuse by the County, a ... municipality, or agent thereof, subject to the provision of the Missouri State Statutes.

Article I of the Regulations contains definitions of terms appearing in the Regulations. The term "Conditional Use Permit" is used interchangeably with the term "Special Use Permit." Those terms are defined in Article I, Section 3, paragraph 103, which reads:

> **Special Use Permit, i.e., Conditional Use Permit**
>
> The conditional use permit, also known as a special use permit, is a means whereby the Board may grant permission for a use that is listed as a conditional use in the Regulations. The Board must review the application and determine whether specific conditions for protection of the area and maintenance of the character of the district are incorporated in the plans for the proposed use. It is not necessary to show practical difficulty or hardship, as the per-

mit is not asking for permission to violate the Regulations, but rather it must be shown that the proposed use is included in the list of conditional uses of the district and that adequate safeguards are specifically included in the plans to insure that the use will not be in any way a detriment to the locality.

The power of the Board regarding conditional uses is spelled out in Section 7(A) of Article XXIII of the Regulations, which reads:

The Board shall have the power to hear and decide ... applications ... for conditional uses.... In considering an application for a conditional use ... the Board shall give due regard to the nature and conditions of all adjacent uses and structures; and in authorizing a conditional use ... the Board may impose such requirements and conditions with respect to location, construction, maintenance and operation in addition to those expressly stipulated in the Regulations for the particular conditional use ... as the Board may deem necessary for the protection of adjacent properties and the public interest.

On June 14, 1991, the City submitted an application to the Greene County Planning and Zoning Department ("P & Z Department") for a conditional use permit to construct and operate the MRF on the chosen site. Describing the MRF, the Director of the P & Z Department said: "The ... MRF ... will ... [accept] commingled municipal solid waste at the treatment floor, the waste is then manually and mechanically sorted, recyclable materials are sorted out and loaded onto trailers for removal to the private sector recyclers, the remaining non-recyclable material is shredded and separated. Organic material is then diverted for composting while inorganics and other non-compostable material is taken to the landfill."

The City's application cited Article V, Section 3(K) of the Regulations (quoted *supra*) as the applicable provision, even though, according to the City, "Garbage or refuse will not be disposed of at the [MRF] site since all materials delivered to the facility will be sorted, processed and delivered to other facilities."

One of the issues in this appeal is whether the operation of the MRF, as described above, constitutes disposal of garbage or refuse—the conditional use allowed by Article V, Section 3(K) of the Regulations. We address that issue *infra*.

Returning to the chronology, the next significant event was a public hearing July 16, 1991, by the Greene County Planning and Zoning Commission ("Zoning Commission"). The transcript of that hearing is in the record on appeal.

At the outset of the hearing, the Director of the P & Z Department presented the recommendation of that department to the Zoning Commission. The recommendation reads:

Evaluation of this site has shown it to be suitable for the location of a Materials Recovery Facility. The site is partially screened from surrounding properties and the highway. Access to the facility and to the Noble Hill landfill is excellent. The impact from noise, odors and light/glare will be moderated due to the size of the site and the surrounding area. For these reasons, among others, the Department recommends approval of this application with the following conditions:

1. That all design criteria outlined in the application be adhered to and if any changes are proposed they be submitted to the Department for review.

2. That a sediment and erosion control plan be submitted and a grading permit be issued prior to any earth work being done.

3. That a stormwater plan with all calculations be submitted to the Greene County Stormwater Engineer for review.

4. That a landscaping plan detailing all existing vegetation, proposed structures and proposed plantings be submitted to the subdivision review committee for review and approval.

5. That any additional development of the 40 acre tract must come back before the Planning and Zoning Commission and the board of Zoning Adjustment for review and approval.

6. That exterior lighting for the structures be placed and adequately shielded to prevent glare and direct view of light from surrounding properties.

7. That if a proposed well is drilled, it meet all Greene County Health Department regulations.

8. That all other existing Greene County Zoning Regulations be met.

After receiving this recommendation, the Zoning Commission heard remarks by the City Manager of the City and the Chairman of the "Citizens' Solid Waste Task Force," each of whom spoke in favor of the application. Nineteen individuals, including two of the individual Plaintiffs in this suit and a State Representative, then spoke in opposition. Additionally, the Zoning Commission allowed numerous questions to be asked of, and answered by, the City Manager. The City and the opponents were also allowed to present speakers in rebuttal.

The transcript of the hearing occupies 76 pages in the record, mostly single-spaced. At the conclusion of the hearing, the Zoning Commission voted to recommend to the Board that it deny the City's application. The Zoning Commission sent the Board a report stating, among other things:

The commission's decision was based in part on:

1. Site is inappropriate for this use, and
2. Facility needs to be located within jurisdiction of governmental entity responsible for it's [sic] operation.

Faced with that, the City submitted an eight-page "Addendum" dated August 7, 1991, to its application. The Addendum set forth additional conditions for the MRF, including: (1) appointment of a Citizens' Committee to monitor the operation and report to the City and Greene County, (2) the City would drill a test well on the site to detect groundwater contamination from the MRF, (3) the City would construct a water line and gas line to the site, (4) the City would not utilize sewage sludge in the "solid waste compost operation," (5) the City would do additional landscaping, (6) the City would not recommend any auxiliary private use on the 387–acre tract, and (7) the City would incorporate performance guarantees in the contract with the MRF operator (presumably Daneco).

The performance guarantees were spelled out in detail and addressed the subjects of noise mitigation, odor control, traffic, and a performance bond by the operator.

On August 12, 1991, the City submitted a second "Addendum" to its application. In it, the City agreed to a "start-up phase" in which a limited amount of solid waste would be processed by the MRF to ensure that the conditions placed on the operation were achieved before full operation began.

On August 13, 1991, the Board [1] conducted a public hearing on the City's application, as amended by the addendums. The hearing lasted approximately six hours. The transcript occupies 105 pages in the record, mostly single-spaced. At the start of the hearing, the Director of the P & Z Department announced he had received a petition with 1,131 signatures stating, among other things, that the MRF should be located in "an industrial zoned area."

A lawyer representing the City spoke in support of the application, as did the City's Acting Director of Public Works, the City's Superintendent of Sanitary Services, the City Manager of the City, a City Councilman, a representative of the "Committee for the Future" which supported a bond issue to finance construction of the MRF, the Chairman of the Citizens' Solid Waste Task Force (who had spoken at the Zoning Commission hearing a month earlier), an architect, and the Mayor of the City.

Twenty-four people, including all three individual Plaintiffs in this suit, spoke in opposition. Of the 24 who spoke, 14 had spoken in opposition at the Zoning Commission hearing a month earlier. The 24 opponents included the same State Representative who had spoken earlier, and a lawyer representing the Willard Fire Protection District.

1. The three-member Board is composed of the Presiding Commissioner and the two Commissioners of Greene County, elected officials. § 64.281, RSMo 1986.

During the hearing, the Board allowed numerous questions to be asked of, and answered by, representatives of the City. At the conclusion of the hearing, the Board voted unanimously to grant the City's application, subject to the conditions recommended by the P & Z Department (quoted *supra*) and the conditions in the City's addendums of August 7, 1991, and August 12, 1991 (described *supra*). The Board thereafter entered a formal order to that effect.[2]

On September 12, 1991, a suit was filed in the Circuit Court of Greene County styled: "Greene County Concerned Citizens, et al., v. Board of Zoning Adjustment of Greene County, et al." We henceforth refer to it as "the 1991 suit." Inexplicably, the record supplied us does not contain the petition in the 1991 suit; however, we glean from other documents in the record that the 1991 suit sought judicial review of the Board's order.

On March 10, 1992, the circuit court entered an order in the 1991 suit. It reads, in pertinent part:

1. Missouri law requires a board of zoning adjustment to enter findings of fact and conclusions of law and to base its decision on those findings and conclusions. Failure to do so requires the court to reverse the board's decision and to remand for appropriate hearings findings, conclusions, and decisions.

2. Defendant, the Board of Zoning Adjustment of Greene County, failed to enter findings of fact and conclusions of law and to render its decision in accordance therewith.

It is, therefore, ordered that this cause is reversed and remanded to the Board of Zoning Adjustment of Greene County for further proceedings and hearings in accordance with the law requiring findings of fact and conclusions of law and a decision in accordance therewith.

On April 21, 1992, the Board reconvened to consider the City's application. The Director of the P & Z Department presented to the Board "the record of the hearing proceed-

ings, evidence, and exhibits presented during prior hearing on this case." The Director also presented briefs and proposed findings of fact and conclusions of law prepared by the City. The Board's presiding officer then announced:

... if there's anyone interested in this proceeding has written arguments, not heretofore filed or wishes to submit any written proposed findings of fact or conclusions of law they may do so at this time.

Bruce Hunt, a lawyer representing Greene County Concerned Citizens, tendered to the Board a brief and proposed findings of fact and conclusions of law. Hunt then said he believed "we are entitled to a full hearing on this matter today." He added:

... since you are precluding us from sharing with you the information that we have learned in the last eight plus months, I must object and state formally on the record that we object to these proceedings today, that we believe that this is not a true public hearing. We believe that the ... fundamental rights of the Citizens of Springfield and Greene County to due process, equal protection of the law, are being blatantly violated by the Commissioner's decision to not allow a full and complete public hearing.... [H]ad we been allowed the opportunity to conduct a full public hearing as we believe we are entitled to receive, we expected to have witnesses present in person who would have testified, people who live near MRF"s, people who work at MRF"s, including MRF sites that the County and City representatives visited. We would have adduced evidence in addition to what we've been able to put in the brief....

After further colloquy, Hunt announced he had two aerial photographs marked Exhibit K.

What occurred next is not shown in the transcript. However, during oral argument in this Court the parties stipulated that Hunt presented each member of the Board a set of

---

**2.** In its order, the Board amplified condition 5 recommended by the P & Z Department by requiring any additional development or construction on the entire 387–acre tract to be reviewed by the Zoning Commission and approved by the Board. Condition 5 had originally required this only in regard to the 40–acre MRF site.

documents marked Exhibits L through X. They appear in the record as pages 1053 through 1388. Among them are reports about health and environmental risks of composting, articles about problems of materials recovery facilities in other states, reports about odors from such facilities, and a memorandum filed by Plaintiffs with the circuit court in the 1991 suit.

The transcript shows the Board's lawyer suggested that the Board rule on Hunt's request "to consider additional evidence."

One of the Board members expressed a belief that the Board would receive "new information" at the session. The Board's lawyer replied:

> I think anyone ... is entitled to present written arguments, written comments and any proposed findings of fact and conclusions of law before the conclusion of this hearing. As far as whether ... those written arguments could include new evidence they should not include new evidence. If they were to include new evidence I would submit that that would be outside the record of the prior proceeding and should not be considered in making a decision or by anybody reviewing any ultimate decision the Board would make.

After further discussion, the Board's lawyer again asked for a ruling on Hunt's "request to present oral evidence or new evidence at this time."

The Board thereupon denied Hunt's request, but kept Exhibits L through X (and, inferably, Exhibit K).

On May 28, 1992, the Board entered written findings of fact, conclusions of law, and an order based on the record of the Zoning Commission hearing of July 16, 1991, the record of the Board hearing of August 13, 1991, and "all other evidence received as a part of the record before this Board." One of the findings was: "The properties adjacent to the MRF location and the public interest will be adequately protected by the specifications for the facility and the use conditions."

The conclusions of law included a determination that using the proposed site for the MRF is a conditional use permitted in an "A-1 Agriculture District" by Article V, Section 3(K) of the Regulations, i.e., disposal of garbage or refuse by the county or a municipality.

The order granted the City's application, subject to a list of conditions covering design criteria, sediment and erosion control, storm water, landscaping, additional development or construction, lighting, groundwater contamination, construction of a water line and a gas line, banning sewage sludge in solid waste compost operations, noise, odor, traffic, security for performance by the MRF operator, and a "start-up phase" (described earlier).

Plaintiffs commenced the instant suit June 19, 1992, in the Circuit Court of Greene County. Their petition sought judicial review per § 64.281.4, RSMo 1986, which reads:

> Any person aggrieved by any decision of the county board of zoning adjustment ... may present to the circuit court having jurisdiction in the county in which the property affected is located, a petition in the manner and form provided by section 536.110, RSMo.

On November 12, 1992, Plaintiffs filed in the circuit court a "Motion to Take Additional Evidence, or in the Alternative, to Remand." Attached to the motion were documents marked Exhibits AA through DD. They appear in the record as pages 1466 to 1562.

Paragraph 10 of the motion alleges that at a session on May 21, 1992, the Board unreasonably excluded "Exhibits K through X" offered by Greene County Concerned Citizens.

We have carefully examined the transcript of the Board's session of May 21, 1992,[3] and have found no offer of any exhibit by anyone. The two preceding paragraphs of this opinion, together with this one and the one that follows, are necessary only because of the

---

**3.** We have not heretofore mentioned that session in this opinion because nothing pertinent to the

issues in this appeal occurred during it.

prayer of Plaintiffs' motion of November 12, 1992. It asks the circuit court to receive additional evidence or, in the alternative, to remand the case to the Board with directions to reconsider its decision in light of additional evidence including, but not limited to, Exhibits K through X and a proposed "expert opinion" (inferably Exhibit DD, a two-page affidavit of an "environmental and infectious disease epidemiologist").

On January 29, 1993, the circuit court denied Plaintiffs' request to present additional evidence. That ruling is the subject of Plaintiffs' second point relied on, addressed *infra.*

On April 1, 1993, the circuit court entered judgment affirming the Board's order of May 28, 1992. The circuit court held the Board's findings of fact, conclusions of law, and order were supported by competent and substantial evidence upon the whole record. The circuit court further held the Board's decision was not in violation of constitutional provisions, was not in excess of the Board's statutory authority or jurisdiction, was not unauthorized by law, was not made upon unlawful procedure or without a fair hearing, was not arbitrary, capricious or unreasonable, and did not involve an abuse of discretion.

This appeal followed.

We first address Plaintiffs' second point, which reads:

> The circuit court erred when it excluded Exhibits AA through DD regarding the hazards of the proposed MRF for the reason that the exhibits could not have been produced in the exercise of reasonable diligence, at the proceedings before the Board of Zoning Adjustment.

Exhibit AA is a collection of news accounts, comments and reports about the proposed MRF, together with correspondence by private citizens and government officials about environmental hazards, financial problems, and other concerns.

Exhibit BB is a collection of similar materials regarding a solid waste composting facility in St. Cloud, Minnesota.

Exhibit CC is a collection of similar materials regarding a MRF in Mora, Minnesota, operated by Daneco.

Exhibit DD, as noted earlier, is an affidavit. It warns of health dangers from municipal solid waste composting, and expresses the opinion that it is safer to live next to a nuclear power plant than within two miles of a composting facility.

According to Plaintiffs, Exhibits AA through DD demonstrate the "environmental and financial havoc" which the MRF will wreak upon the community. Plaintiffs devote nine pages of argument in their brief to the premise that the MRF will be an environmental and financial catastrophe. As we understand their logic, they believe that had the circuit court received Exhibits AA through DD in evidence, the circuit court would have reached the same conclusion, or would at least have decided to remand the case to the Board with directions to reconsider its decision in light of Exhibits K through X—exhibits Plaintiffs say the Board "unreasonably excluded at the proceedings before it on April 21, 1992." [4]

Plaintiffs cite one case in support of their second point, *Lorenz v. City of Florissant, Mo.,* 747 S.W.2d 222 (Mo.App.E.D.1988). That case, like this one, was an action for judicial review of a zoning decision. Determining that § 536.140, 1978,[5] applied, the Eastern District of this Court held subsection 3 of that statute allows the trial court to weigh the evidence when the action of the agency being reviewed does not involve the exercise by the agency of administrative discretion in the light of the facts, but involves only the application by the agency of the law to the facts. 747 S.W.2d at 226. Where the action of the agency involves administrative discretion, the trial court may not weigh the evidence. In that situation, the trial court

---

**4.** This assertion is inconsistent with the allegation in Plaintiffs' motion of November 12, 1992, in the circuit court, which complains that Exhibits K through X were excluded at a Board session on *May 21, 1992.* Earlier in this opinion, we noted we were unable to find any offer of any

exhibit by anyone in the transcript of the May 21, 1992, session.

**5.** Section 536.140, 1978, was carried forward unchanged in RSMo 1986.

may not hear and consider additional evidence. *Id.*

*Lorenz* further held that where the trial court is not entitled to weigh the evidence and determine the facts for itself, § 536.140.4 authorizes the trial court, if it finds there is competent and material evidence which, in the exercise of reasonable diligence, could not have been produced or was improperly excluded at the hearing before the agency, to remand the case to the agency with directions to reconsider the case in the light of such evidence. 747 S.W.2d at 226.

*Lorenz* held the zoning decision there (a variance based on hardship) involved administrative discretion, hence the trial court was not entitled to weigh the evidence for itself and could not receive additional evidence. *Id.*

■ Similar circumstances exist here. In granting the City a conditional use permit to construct and operate the MRF on the chosen site, the Board was authorized to impose, and did impose, conditions regarding a number of factors, discussed *supra.* Those determinations obviously involved the exercise of discretion. Consequently, this is not a case where the circuit court was authorized to weigh the evidence and determine the facts for itself. That being so, the circuit court did not err in denying Plaintiffs' request to consider Exhibits AA through DD. *Lorenz,* 747 S.W.2d at 226.

That conclusion is consistent with *State ex rel. Kolb v. County Court of St. Charles County,* 683 S.W.2d 318 (Mo.App.E.D.1984), an action for judicial review of a zoning decision by a county court. There, the Eastern District of this Court said:

> The case is not to be tried de novo. The trial court was authorized to hear additional evidence only for the purposes of proving what evidence was before the county court or of proving any fact touching upon the legality of the hearing.

683 S.W.2d at 322.

Exhibits AA through DD did not pertain to either of the subjects specified in *Kolb.* Plaintiffs' contention that the circuit court erred in excluding Exhibits AA through DD is without merit.

■ We need not, in considering Plaintiffs' second point, decide whether the circuit court should have remanded the case to the Board with directions to reconsider its decision in light of Exhibits AA through DD or Exhibits K through X. That theory of error is not set forth in the second point. The questions for decision on appeal are those stated in the points relied on; a question not there presented will be considered abandoned. *Pruellage v. De Seaton Corp.,* 380 S.W.2d 403, 405[3] (Mo.1964); *Mashburn v. Tri–State Motor Transit Co.,* 841 S.W.2d 249, 252[4] (Mo.App.S.D.1992). Issues to which an appellant alludes only in the argument portion of the brief are not presented for review. *Berger v. Huser,* 498 S.W.2d 536, 539[2] (Mo.1973); *In re Marriage of Riley,* 817 S.W.2d 644, 647[3] (Mo.App.S.D.1991).

We next consider Plaintiffs' third point, which reads:

> The Board of Zoning Adjustment's decision to approve the City's application for a conditional use permit was arbitrary and capricious, was not supported by substantial and competent evidence upon the whole record and involved an abuse of discretion for the reason that the MRF will violate the Greene County Zoning Regulations.

Because the point supplies no clue as to wherein and why the MRF will violate the Regulations, we have endeavored to extract the import of the point from the argument that follows it, a chore we are not obliged to undertake. *J.C. Jones and Co. v. Doughty,* 760 S.W.2d 150, 153 (Mo.App.S.D.1988); *Tripp v. Harryman,* 613 S.W.2d 943, 950[11] (Mo.App.S.D.1981).

As we have seen, the site the City chose for the MRF is zoned "A–1 Agriculture District." Article V, Section 3(K) of the Regulations allows disposal of garbage or refuse by a municipality as a conditional use in such a district. Therefore, if the processes to be carried out at the MRF constitute disposal of garbage or refuse by a municipality, the Regulations allow the MRF as a conditional use.

Plaintiffs' hypothesis of error, as we divine it, is that the procedures to be performed at

the MRF constitute a "complex, industrial operation," not the disposal of garbage or refuse. According to Plaintiffs, the MRF will be an "industry" as defined by the Regulations. Plaintiffs point out that paragraph 48 of Section 3 of Article I of the Regulations defines "industry" as ". . . preparation or treatment of any article, substance or . . . commodity for commercial use."

Plaintiffs assert, "The entire purpose of the MRF is to process and treat garbage or refuse, and turn it into recyclable materials." Industry is not a permitted use in an "A–1 Agriculture District." Consequently, say Plaintiffs, the Regulations bar the City from using the chosen site for the MRF.

The Board and the City—we henceforth refer to them collectively as "Defendants"—respond: "[T]he very nature of the MRF, which is accepting and sorting municipal refuse, and then composting the remaining organic stream, is a means of disposal. Clearly, this is a conditional use under Art. V, Section 3K."

Defendants rely on evidence that ten percent of the solid waste delivered to the MRF will be removed as recyclable. Fifty percent will become compost. Ten percent will be lost as moisture evaporation in the composting process. The remaining thirty percent will be delivered to a landfill at a different location.

As we understand it, after the composting process is completed, the City will use some of the compost for improving two landfills that were closed in the mid–1970's. After testing to assure quality, some compost can be used on agricultural land or sold to landscapers. The City has indicated it will explore "markets" for the compost.

In sum, in the words of the City Attorney: "There will be no on site disposal of any garbage or refuse at the MRF site, because it will serve as a processing facility and all of the products will be recycled or disposed of at a landfill which will be located at another site. . . ."

The Board obviously understood the MRF would operate that way. One of the Board's findings was: "Processed solid waste materials will be removed from the site of the MRF for final disposition off-site."

In their reply brief, Plaintiffs argue that because none of the solid waste delivered to the MRF will remain there permanently, the MRF's function is not "disposal" of garbage or refuse within the meaning of Article V, Section 3(K) of the Regulations. In Plaintiffs' words, what will occur at the MRF is treatment or processing of solid waste in anticipation of disposal elsewhere.

■ We find no definition of "disposal" in the Regulations. Consequently, we must ascertain the intent of Article V, Section 3(K) of the Regulations by giving the word "disposal" its ordinary, plain, and natural meaning. *Coots v. J.A. Tobin Construction Co.,* 634 S.W.2d 249, 251[2] (Mo.App.W.D.1982); *State ex rel. C.C.G. Management Corp. v. City of Overland,* 624 S.W.2d 50, 53[4] (Mo. App.E.D.1981).

*Webster's Third New International Dictionary* (Merriam–Webster Inc. 1986) defines "disposal" in sundry ways, including:

> [T]he act or process of disposing: as . . . a discarding or throwing away . . . *esp:* the discarding or destroying of garbage or sewage or its transformation into something useful (as fertilizer) or innocuous (as by incineration). . . .

Here, the first step that will occur when refuse arrives at the MRF is separating it into three categories: (1) material that can be recycled, (2) material that can be transformed into compost, and (3) material unsuitable for either purpose.

The second step regarding category "1" material is removal of it from the MRF site to other locations for recycling. The second step regarding category "3" material is removing it from the MRF site to a landfill, where it will remain. The second step regarding category "2" material is transforming it into compost at the MRF site, which will take several weeks. The final step will be removal of the compost from the MRF site to other destinations (old landfills, agricultural land, or landscapers).

All of those steps are constituent parts of the process of disposal of solid waste by

discarding it or transforming it into something useful.

◼ Plaintiffs' reasoning, as we grasp it, is that "disposal" occurs only if that which is being disposed of remains permanently at the site where the process begins. Such logic is contrary to the dictionary definition of "disposal," quoted *supra.* If that which is being disposed of is transformed into something useful, it is apparent there may be places for using the new substance other than the site where the transformation occurs.

◼ Furthermore, the interpretation placed upon a zoning regulation by the body in charge of its enactment and application is entitled to great weight. *Taylor v. City of Pagedale,* 746 S.W.2d 576, 578 (Mo.App.E.D. 1987); *Coots,* 634 S.W.2d at 252[6]. Here, as we have seen, the Board determined that the MRF is a conditional use permitted in an "A–1 Agriculture District" by Article V, Section 3(K) of the Regulations.

◼ Where a term in a zoning ordinance is susceptible of more than one interpretation, the courts are to give weight to the interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property owner to use his land as he wishes. *Taylor,* 746 S.W.2d at 578; *Coots,* 634 S.W.2d at 251–52[4]. Given the dictionary definition of "disposal" in the context of discarding refuse, we find no error in the Board's interpretation.

Plaintiffs argue the Regulations contemplate that "an A–1 District is a quiet, rural area." Plaintiffs insist that the "benign categories of uses" intended by the Regulations for such a district do not include a "noisy, smelling composting factory."

We disagree. The conditional uses allowable in an "A–1 Agriculture District" include: railroad tracks (on which trains will presumably travel); commercial feed lots; hog, poultry, fur or other commercial animal farms; commercial mines; oil drilling; quarries and gravel pits; airports and landing fields; and rifle, skeet, trap and pistol ranges. Such uses are accompanied by noise, odor and traffic.

◼ Plaintiffs seize upon paragraph "(A)" of Section 13 of Article IV of the Regulations, which reads:

No land or structure in any district shall be used ... in any manner so as to create a dangerous, injurious, noxious or otherwise objectionable fire, explosive or other hazard; noise or vibration, smoke, dust, odor or other form of air pollution; ... in such a manner ... as to adversely affect the adjoining premises or surrounding area....

Plaintiffs maintain the MRF will violate this provision in that the adjoining premises will be adversely affected by "any number of these ... prohibited activities."

The Board found:

With due regard to the nature and conditions of uses and structures adjacent to the proposed MRF site, the Board finds that the proposed conditional use will not be a detriment to the locality, and that the conditions attached to the conditional use permit will provide adequate safeguards of the locality and the public interest.

Plaintiffs devote four pages of argument in their reply brief to the proposition that the conditions placed on the MRF by the conditional use permit granted by the Board are inadequate to control noise, odor and traffic. This is a thinly veiled invitation to us to reweigh the evidence and reach our own conclusion on those subjects.

The scope of judicial review in this case is established by § 536.140.2, RSMo 1986, which reads:

The inquiry may extend to a determination of whether the action of the agency

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

■ In determining whether the Board's decision is supported by competent and substantial evidence upon the whole record, we, as a reviewing court, cannot substitute our judgment for that of the Board. *Campbell v. City of Columbia,* 824 S.W.2d 47, 49 (Mo.App.W.D.1991); *Lorenz v. City of Florissant,* 787 S.W.2d 776, 777 (Mo.App. E.D.1990). In reviewing for substantial evidence to support the Board's decision, we are required to view the evidence in the light most favorable to the Board's decision, giving it the benefit of all reasonable inferences. *Campbell,* 824 S.W.2d at 49[2]; *Lorenz,* 787 S.W.2d at 777. If the result reached by the Board could reasonably have been reached, we, as a reviewing court, are without authority to disturb it unless it was clearly contrary to the overwhelming weight of the evidence. *Campbell,* 824 S.W.2d at 49[2]; *Lorenz,* 787 S.W.2d at 777.

At its hearing on August 13, 1991, the Board received evidence regarding noise, odor and traffic and the means for controlling them. As reported earlier, the Board's order of May 28, 1992, granting the conditional use permit contains numerous conditions for controlling noise, odor and traffic. Such conditions include hours of operation, use of heavy equipment, design of buildings, locating equipment and activities inside instead of outside, aeration equipment enclosed by soundproof structures, odor dilution ratio, and other requirements.

We shall not extend this prolix opinion by discussing the evidence and abatement procedures in detail. We hold the Board's determination that the conditions required by the conditional use permit are adequate to safeguard the adjoining premises and surrounding area is supported by competent and substantial evidence on the whole record, that no error of law appears in that determination, and that a detailed account of the evidence on those subjects would have no precedential value. Plaintiffs' contention that the conditional use permit violates Article IV, Section 13(A) of the Regulations is denied in accordance with Rule 84.16(b)(4)

and (5), Missouri Rules of Civil Procedure (1993).

■ The final contention argued by Plaintiffs under their third point is that the MRF can process a maximum of 500 tons of refuse per day. Plaintiffs call our attention to a news account of a statement by the City Manager in November, 1992, that 600 tons of refuse must be received at the MRF each day to generate enough revenue to repay the bonds which will fund construction. Plaintiffs assert the record does not demonstrate that the noise and odor controls will be adequate for a 600-ton-per-day volume.

The statement cited by Plaintiffs was not before the Board, as the statement had not been made at the time of the Board's hearing. As explained earlier, judicial review of the Board's decision is based on the evidence presented to the Board. Accordingly, we cannot consider the November, 1992, statement of the City Manager.

However, we note that at the Board's hearing on August 13, 1991, the City Manager, as we understand his remarks, stated the MRF is designed to process 600 to 800 tons of refuse per day. The Board therefore had that information when it formulated the safeguards in the conditional use permit and found them sufficient to protect the locality and the public interest.

We find no basis for reversal of the Board's decision in any of the arguments presented by Plaintiffs in support of their third point. It is denied.

■ We turn next to Plaintiffs' first point, which reads:

The Board ... erred, used unlawful procedure, and abused its discretion when it failed to conduct any evidentiary hearing open to the public and refused to consider the additional evidence offered by Concerned Citizens after reversal of this case from the Circuit Court for the reason that it violated the Circuit Court's order, failed to exercise its lawful authority to hear evidence, and violated the procedural due process rights of Citizens.

Plaintiffs base this point on the circuit court's order of March 10, 1992, in the 1991

suit, quoted *supra.* That order reversed the Board's original order granting the conditional use permit and remanded the case to the Board "for further proceedings and hearings in accordance with the law requiring findings of fact and conclusions of law and a decision in accordance therewith."

Plaintiffs assert the circuit court's order required the Board "to reopen the record, including the convening of a public hearing with the taking of additional evidence, for entering findings of fact and conclusions of law." As we understand the argument following Plaintiffs' first point, they rely on *Hughes v. Board of Education, Charleston Reorganized School District No. 1,* 599 S.W.2d 254 (Mo.App.S.D.1980).

We are unconvinced that *Hughes* required the Board to hear additional evidence in the instant case. In *Hughes* (judicial review of the termination of a tenured teacher's contract), one of the issues presented to the appellate court was whether the board of education abused its discretion by denying the teacher's request to produce records of the evaluations of other teachers during the pertinent period. 599 S.W.2d at 255. Although the board of education had conducted an evidentiary hearing, its decision to terminate employment was not accompanied by findings of fact or conclusions of law. *Id.* at 254–55. The appellate court reversed the board of education's decision and remanded the case with directions that the board reopen the hearing to permit the teacher to have a subpoena duces tecum for the reports she requested, and to hear additional evidence on one specified issue, *if appropriate. Id.* at 256. Thereafter, the board of education was to make findings of fact and conclusions of law supporting any decision it made. *Id.*

Here, nothing in the record indicates the Board denied anyone the right to present evidence on any issue at its hearing on August 13, 1991. Indeed, as we have seen, the Board heard from 24 opponents of the MRF, including all three individual Plaintiffs in this suit. As we understand Plaintiffs, they do not contend they were denied any rights at the Board's hearing on August 13, 1991.

After the March 10, 1992, order of the circuit court in the 1991 suit, the Board reconvened on April 21, 1992. As noted earlier, at that session the Board received as evidence the record of its August 13, 1991, hearing, together with the record of the Zoning Commission hearing of July 16, 1991. The Board also received briefs and proposed findings of fact and conclusions of law tendered by the City and by Greene County Concerned Citizens.

The Board's findings of fact and conclusions of law of May 28, 1992, recite that they are based on the record of the hearings of July 16, 1991, and August 13, 1991, plus all other evidence received as part of the Board's record.

Defendants cite *Ruffin v. City of Clinton,* 849 S.W.2d 108 (Mo.App.W.D.1993), for the proposition that the Board was not required to hear additional evidence following the March 10, 1992, order of the circuit court. In *Ruffin,* a municipality's personnel merit board, after a hearing, decided to demote and suspend a police officer. The board chairman prepared inadequate findings, which were adopted by the city council. Upon judicial review, the circuit court reversed the disciplinary order because of the insufficient findings. Thereafter, the council, without hearing further evidence, reviewed the record of the merit board hearing and adopted proper findings of fact and conclusions of law. The officer again obtained judicial review. The appellate court held, among other things, that it was proper for the council to adopt its findings of fact and conclusions of law on the basis of the merit board record. *Id.* at 112[9].

As support for its holding in *Ruffin,* the court cited *State ex rel. Powell v. Wallace,* 718 S.W.2d 545 (Mo.App.E.D.1986). There, after an evidentiary hearing in 1984, a city council removed the mayor from office. Upon judicial review, the circuit court vacated the council's decision because the council failed to issue written findings of fact and conclusions of law. Thereafter, the council issued findings of fact and conclusions of law, and again removed the mayor.

This time, the circuit court affirmed. On appeal, the mayor argued, among other

things, that the council's decision was erroneous in that the findings of fact and conclusions of law were not rendered by the same council members who heard the evidence—membership of the council had changed as the result of an election after the 1984 hearing. *Id.* at 549. The appellate court noted that the findings of fact and conclusions of law stated the council had considered the evidence and arguments at the 1984 hearing in rendering its decision. This, said the court, satisfied the requirement of § 536.-080.2, RSMo 1978, which requires only that each official of an agency who joins in rendering a final decision in a contested case shall, prior to such decision, either hear all the evidence, read the full record including all the evidence, or personally consider the portions of the record cited or referred to in the arguments or briefs. *Id.* at 549[10]. The appellate court affirmed the judgment of the circuit court upholding the council's decision.

In the instant case, opponents of the MRF had a greater opportunity to present their evidence and arguments to the Board than did the police officer in *Ruffin* or the mayor in *Powell.* In *Ruffin,* the city council did not hear any evidence; it made its decision on the record of a hearing before a merit board. In *Powell,* the city council that made the ultimate decision did so on the record of a hearing by a predecessor council.

Here, the members of the Board who made the decision of May 28, 1992, were the same members who heard the evidence August 13, 1991. Additionally, those members considered the record of the Zoning Commission hearing of July 16, 1991. Consequently, the Board had the benefit of evidence adduced at two hearings, the second of which was conducted by the Board itself. The procedure here surpassed the requirements of *Ruffin* and *Powell.*

Plaintiffs assert in the argument following their first point that the Board, at its session on April 21, 1992, abused its discretion by refusing to consider "the additional evidence offered by citizens."

Earlier in this opinion we set forth an account of that session. Lawyer Hunt, representing Greene County Concerned Citizens, tendered Exhibits K through X. Although the Board physically kept them, the Board denied Hunt's "request to present oral evidence or new evidence." We therefore assume the Board, in reaching its decision of May 28, 1992, did not consider Exhibits K through X.

Plaintiffs, as we understand their argument, maintain the Board had discretion to consider those exhibits but exercised no discretion in deciding to disregard them. Instead, say Plaintiffs, the Board simply took the advice of its lawyer that new evidence should not be considered. This, according to Plaintiffs, was error and requires us to reverse the Board's order of May 28, 1992, and remand the case to the Board with directions to consider the additional evidence Plaintiffs desire to present.

In support of their contention, Plaintiffs cite *Yeager v. Yeager,* 622 S.W.2d 339 (Mo. App.E.D.1981), a mandamus proceeding. There, the Eastern District of this Court held that where a trial judge refuses to exercise his discretion, mandamus will lie.

We find no support for Plaintiffs in *Yeager.* The instant case is an action for judicial review of the Board's order of May 28, 1992. It is not a mandamus proceeding. Whether Plaintiffs could have successfully used mandamus to compel the Board to exercise its discretion in deciding whether to consider Exhibits K through X and any oral evidence Plaintiffs desired to present is not an issue to be decided in this appeal. Instead, what must be decided is whether the Board's refusal to receive additional evidence entitles Plaintiffs to a reversal.

Plaintiffs cite no case that holds an administrative agency, having once heard all the evidence offered, must receive new evidence where a court reverses the agency's decision for failure to make findings of fact and conclusions of law.

Defendants cite *Medvik v. Ollendorff,* 772 S.W.2d 696 (Mo.App.E.D.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990), where a municipal employee was fired by an administrative official. Upon judicial review, the decision was reversed because the official failed to make findings of fact and conclusions of law. After remand,

the official (who had heard no evidence) reviewed the record of a hearing by the municipality's civil service board and granted the employee an opportunity to present oral argument or a written brief. *Id.* at 700. The official then made findings of fact and conclusions of law, and fired the employee. This time, the circuit court affirmed. On appeal, the Eastern District of this Court held the procedure met the requirements of procedural due process. *Id.*

Here, after the circuit court's order of March 10, 1992, in the 1991 suit, the Board reconvened on April 21, 1992, and invited anyone interested in the case to present written arguments or proposed findings of fact and conclusions of law. Lawyer Hunt did so on behalf of Greene County Concerned Citizens.

■■ Nothing in the record indicates the circuit court entered its order of March 10, 1992, because the Board had wrongfully excluded evidence at its hearing on August 13, 1991. The March 10, 1992, order does not cite exclusion of evidence as the basis for reversal and remand. It cites only the Board's failure to enter findings of fact and conclusions of law. The order remands the case "for further proceedings and hearings in accordance with the law requiring findings of fact and conclusions of law and a decision in accordance therewith."

We do not construe the order to require the Board to hear new evidence. We construe it as a directive that the Board comply with the requirements for hearings in administrative proceedings. Applying *Ruffin,* 849 S.W.2d 108, *Powell,* 718 S.W.2d 545, and *Medvik,* 772 S.W.2d 696, we hold the Board did more than those cases require, in that it based its findings of fact and conclusions of law on evidence it personally heard August 13, 1991, and on the record of the Zoning Commission hearing July 16, 1991.

We hold the Board's refusal to consider Exhibits K through X, tendered at the April 21, 1992, session, does not warrant reversal. The same is true of the Board's refusal to hear testimony on that occasion, but for a different reason.

■■ Subject to a narrow exception inapplicable here, appellate courts will not review a claim of error regarding exclusion of evidence absent a specific and definite offer of proof. *Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 883[14] (Mo. banc 1985). This rule applies to judicial review of decisions of administrative agencies. *Bauer v. Custom Trailer Repair, Inc.,* 829 S.W.2d 104, 105–06[2] (Mo.App.E.D. 1992).

■■ There was no offer of proof of any testimony on April 21, 1992. The only thing said was that Greene County Concerned Citizens wanted to present witnesses who live near, and work at, materials recovery facilities. The record is bare of any offer of what their testimony would have been. Plaintiffs are therefore foreclosed from complaining about the Board's refusal to hear testimony on April 21, 1992.

Finding no merit in any of Plaintiffs' arguments in support of their first point, we deny it.

■■ We next consider Plaintiffs' fifth point. It avers the Board's order granting the conditional use permit was arbitrary and capricious, unsupported by competent and substantial evidence upon the whole record, and was an abuse of discretion in that the operation of the MRF will constitute a nuisance.

The argument following this point is a reprise of arguments following Plaintiffs' third point, i.e., that the evidence presented by opponents of the MRF demonstrates it will produce noise, odor and environmental damage, and the conditions imposed by the conditional use permit will not prevent such consequences.

■■ As observed in our discussion of Plaintiffs' third point, this is a request that we reweigh the evidence on those issues. As explained there, it is an invitation we cannot accept. Even if Plaintiffs' evidence is sufficient to support their contention, an issue we need not decide, we have already held the evidence is sufficient to support the Board's determination that the conditions imposed by the conditional use permit will safeguard the adjoining premises and surrounding area

from the hazards Plaintiffs fear. If competent and substantial evidence supports an administrative decision, the substantiality of contrary evidence is immaterial. *Prince v. County Commission of Franklin County*, 769 S.W.2d 833, 835 (Mo.App.E.D.1989); *City of Lake Lotawana v. Lehr*, 529 S.W.2d 445, 452[10] (Mo.App.1975). Plaintiffs' fifth point is denied.

■ Plaintiffs' fourth point, the only one not yet addressed, reads:

The Board of Zoning Adjustment's decision to approve the MRF as a conditional use was arbitrary and capricious, was not supported by competent and substantial evidence upon the whole record and involved an abuse of discretion for the reason that the MRF is contrary to the Greene County Comprehensive Plan.

The point fails to identify the provision—or provisions—of the Plan which the MRF contravenes, and supplies no clue as to wherein and why the evidence was insufficient to support the decision granting the conditional use permit. The point is therefore insufficient to present anything for appellate review. *Phillips v. Phillips*, 819 S.W.2d 413, 416[2] (Mo.App.S.D.1991); *Best v. Culhane*, 677 S.W.2d 390, 394[4] (Mo.App.E.D.1984); *Tripp*, 613 S.W.2d at 950[12]. Furthermore, the argument following the point is essentially a weight-of-the-evidence argument, not cognizable in this appeal by reason of the case law cited earlier.

Deciding this appeal within the limitations governing judicial review of a decision by a zoning authority granting a conditional use permit, we find no basis for reversal of the Board's order in any point relied on by Plaintiffs. The judgment of the circuit court upholding the Board's decision is affirmed.

FLANIGAN, P.J., and GARRISON, J., concur.