In re the MARRIAGE OF Honni Ann FLUD and Mitchell Alan Flud.

Honni Ann FLUD, Respondent,

v.

Mitchell Alan FLUD, Appellant.

No. 20311.

Missouri Court of Appeals,
Southern District,
Division Two.

June 26, 1996.

Wayne Gifford, Waynesville, for appellant.

No appearance for respondent.

CROW, Judge.

Mitchell Alan Flud appeals from a "Judgment of Dissolution of Marriage."[1] The judgment (a) dissolved Mitchell's[2] marriage to Honni Ann Flud, (b) ordered Mitchell to pay Honni $500 per month maintenance for one year, (c) awarded each party certain specific personal property, (d) assigned each party certain debts, and (e) granted Honni's lawyer a $1,282.50 attorney fee award against Mitchell. The judgment also said:

> "The Court finds that Defendant[3] is a member on active duty with the United States Army, and that Plaintiff is entitled to 20% of Defendant's disposable retirement pay and, THEREFORE, IT IS ORDERED THAT 20% of Defendant's disposable retirement pay is awarded to Plaintiff, and Plaintiff is to receive any and all costs [sic] of living increases."

Mitchell complains the trial court erred in (1) granting Honni maintenance, (2) awarding Honni "most of the marital property" and "part of" Mitchell's retirement benefits, and (3) failing to make specific findings of fact.

The parties married June 27, 1987. Both were then in the Army. The union produced no offspring.

---

1. Section 452.305.1, RSMo 1994, refers to the document that dissolves a marriage as a "decree of dissolution of marriage." We infer from the transcript that the trial court may have designated the document here a "Judgment" because of the amendment to Rule 74.01(a) that took effect January 1, 1995. The amendment reads, in part: "A judgment is entered when a writing signed by the judge and denominated 'judgment' is filed."

2. For brevity and clarity, we refer to the parties by their respective forenames. We mean no disrespect.

3. The judgment refers to Mitchell as "Defendant," and to Honni as "Plaintiff."

On March 31, 1994, Honni received a "disability separation" from the Army. Although the evidence about that is not as precise or thorough as it should be, we learn from the record that Honni was granted "disability severance pay" in a "lump sum" amount of approximately $26,600, from which some $7,000 was withheld as tax. As we comprehend Honni's testimony, she hoped to receive a refund of this $7,000 when she filed her 1994 tax return.

Honni's use of the approximately $19,600 cash she received upon severance was evidently a factor on which the trial court based its decision as to the property each party should receive.

There was evidence indicating that upon receiving the $19,600, Honni put $3,000 in her "personal" savings account and deposited some $16,600 in a joint account maintained by her and Mitchell in the "Marine Corps West Federal Credit Union." We henceforth refer to the latter account as "the Marine account."

Although we have not been furnished the exhibits received in evidence at trial, we deduce from the transcript that Honni disbursed the following amounts from the Marine account: (1) $1,750 to an "IRA" in Mitchell's name, (2) $3,328.08 to pay off Mitchell's "truck balance," (3) $837.17 to pay off Mitchell's "DPP"—evidently a "deferred payment plan" similar to a credit card balance, (4) $401.88 to pay off a "joint Visa account," (5) $1,700 for new carpet and floor covering in "the marital home," (6) $1,800 to Honni's "IRA account," (7) $880 for an "extended warranty" on a Mazda automobile and (8) approximately $9,000 in "mutual funds" in both her and Mitchell's names.

An alert reader will realize the aggregate amount of these eight disbursals is almost $19,700. Obviously, there was money in the Marine account besides the $16,600 deposited from Honni's severance pay.

The parties separated July 14, 1994. At that time, they owned a house. It was sold October 31, 1994. After "the mortgage and everything [was] paid off," $750 remained.

At time of trial (January 24, 1995), the Mazda automobile mentioned in disbursal "7," above, was in Honni's possession, and was encumbered by a lien of $9,621.40. Honni was a "full time student at Columbia College, studying to be an accountant." She was receiving assistance "under a vocational rehabilitation program ... through the Veterans Administration." Honni testified, "They pay my tuition, my books, and presently it's $453 a month for the months that I'm enrolled full time." However, added Honni, the amount drops to about $370 after the dissolution.

Mitchell, at time of trial, held the rank "E–6" and was "on orders" to go to Germany.

At the conclusion of the evidence, Mitchell's lawyer made a verbal request that the trial court make findings on a multitude of issues including, *inter alia:* whether the $1,750 in disbursal "1," above, was a gift to Mitchell; whether the "$27,000 received by [Honni] was ... marital property"; whether the $3,000 placed by Honni in her personal savings account was marital property; whether the $1,800 in disbursal "6," above, was marital property; and whether the mutual funds in disbursal "8," above, were marital property. Mitchell's lawyer also reminded the trial court it needed to "make some sort of disposition" of the $750 from the sale of the house.

Mitchell's lawyer argued that Honni was not entitled to any portion of Mitchell's "military retirement." However, if the trial court decided otherwise, Mitchell's lawyer asked the court "to make a finding as to why [Honni] is entitled to that."

Regarding maintenance, Mitchell's lawyer asked the trial court "to find what facts support the fact that she ... lacks sufficient [property] to properly support herself, especially considering the fact that she is drawing $465 [sic] per month from VA or somebody."

The trial court said:

"If you cover each and every one of those in your proposed findings of fact, I will consider them, that which I believe I'm required to consider. Otherwise, I'm not going to consider it at all."

The trial court announced that each party would have 45 days "to submit proposed

findings of fact and conclusions of law and a proposed judgment."

Nothing in the record indicates Mitchell's lawyer tendered any proposed findings of fact, conclusions of law, or judgment before—or even after—the deadline.

The judgment contains the following provisions regarding property:

"B. The Plaintiff is awarded the following as her sole and separate property, to-wit: All of wife's clothing, jewelry, personal effects, and all personal property in her possession; the 1993 Mazda MX–3 automobile; the 14″ Sony color television, the T. Rowe Price Mutual Funds Accounts in the amount of $6,000.00; the Fidelity Mutual Fund in the amount of $3,000.00; the IRA Account listed in her name only in the amount of $1,800.00; the IRA Account listed in the name of Defendant only in the amount of $1750.00.

. . . .

E. Defendant is awarded the following as his sole and separate marital property, to-wit: All of Defendant's clothing, jewelry, personal effects, and all personal property in his possession; the 1990 Ford–150 pickup truck; the 1976 Chevrolet Malibu automobile; and the 1982 Suzuki motorcycle.

. . . .

H. All other money not previously awarded, and held in any joint account, shall be divided equally between Plaintiff and Defendant."

As reported earlier, the judgment also awards Honni 20 percent of Mitchell's "disposable retirement pay."

Before considering Mitchell's complaints about the maintenance award and the disposition of property (including his retirement pay), we address his third point, which assigns error in the trial court's failure to make "specific findings of fact as requested by counsel for [Mitchell] in detail." The claim is based on Rule 73.01, Missouri Rules of Civil Procedure (1995), which reads, in pertinent part:

"(a) In cases tried without a jury . . . :

. . . .

(3) . . . If any party so requests before final submission of the case, the court shall dictate to the court reporter, or prepare and file, a brief opinion containing a statement of the grounds for its decision . . . ; and . . . if requested by counsel shall, include in its findings on such controverted fact issues as have been specified by counsel. . . ."

The only case cited by Mitchell in support of the point, *Tatro v. Grofe*, 514 S.W.2d 652 (Mo.App.1974), does not aid him. There the appellate court rejected a contention that the trial court erred in refusing to make findings of fact. The appellate court held the request at trial was so ambiguous that the trial court evidently understood it as a request that counsel be permitted to submit proposed findings of fact to aid the court in its decision. *Id.* at 653.

A similar claim of error was denied in *In re Marriage of Burroughs*, 691 S.W.2d 470 (Mo.App. E.D.1985), where the appellate court held the request for findings was too vague to identify any specific fact issue for the trial court to determine. *Id.* at 473[1].

However, there are instances where trial courts have been reversed for failure to make findings on specified fact issues where findings were properly requested. Two such cases are *Eagleton v. Eagleton*, 767 S.W.2d 582 (Mo.App. E.D.1988), and *Lattier v. Lattier*, 857 S.W.2d 548 (Mo.App. E.D.1993).

■ The provisions of Rule 73.01(a)(3) are mandatory where a party properly requests findings on specified fact issues. *Lattier*, 857 S.W.2d at 549; *Eagleton*, 767 S.W.2d at 584. Failure of a trial court to make specific findings of fact as requested is error and mandates reversal when such failure materially interferes with appellate review. *Lattier*, 857 S.W.2d at 549; *Eagleton*, 767 S.W.2d at 586. However, failure of a trial court to issue findings which were properly requested does not always require reversal. *Lattier*, 857 S.W.2d at 549[2]. If the record is sufficient to support the judgment, the appellate court will affirm. *Id.*

With those holdings in mind, we turn to the parts of the judgment pertaining to property.

As we have seen, there is evidence that several of the parties' assets were traceable to the approximately $19,600 cash Honni received as "disability severance pay." We therefore commence our examination of the trial court's apportionment of property by considering how that money should be classified.

The term "disability severance pay" connotes money representing lost earnings occasioned by inability to work. *Cf. In re Marriage of Medlock,* 749 S.W.2d 437, 441 (Mo. App. S.D.1988). In that regard, *Pauley v. Pauley,* 771 S.W.2d 105, 107–10[1] (Mo.App. E.D.1989), holds that a "lump sum settlement" of a workers' compensation claim during marriage is non-marital property to the extent that it compensates the recipient for future loss of earnings accruing after dissolution.

■ We infer from the trial court's disposition of property in the instant case that the court treated Honni's "disability severance pay" as non-marital property. Apparently, the trial court found the pay was compensation to Honni for future loss of earnings.

■ Mitchell, as appellant, bears the burden of demonstrating error. *Medlock,* 749 S.W.2d at 440, citing *State ex inf. Ashcroft, ex rel. Plaza Properties, Inc. v. City of Kansas City,* 687 S.W.2d 875, 876[2] (Mo. banc 1985). Given the paucity of detail about the "disability severance pay," we hold Mitchell has failed to demonstrate the trial court erred in treating that item as non-marital property. However, that does not resolve the issues about that item.

As we understand the record furnished us, Honni put $3,000 of the "disability severance pay" into her "personal" savings account.[4] That evidence is sufficient to support a finding that $3,000 of the "disability severance pay" never became marital property.

However, we have gleaned from Honni's testimony that she put the remaining $16,600 in the Marine account—a joint account. Placing separate property of a spouse into joint names of both spouses creates a presumption that the property transferred became marital property, and clear and convincing evidence is required to show the transfer was not intended as a gift. *Spidle v. Spidle,* 853 S.W.2d 311, 314[2] (Mo.App. S.D. 1993).

Because the trial court made no finding as to whether the $16,600 mentioned in the preceding paragraph became marital property upon being deposited in the Marine account, we cannot ascertain the trial court's rationale for awarding Honni the mutual funds (totalling $9,000), her "IRA Account," and Mitchell's "IRA Account." Furthermore, as to Mitchell's IRA, Honni, as we grasp her testimony, avowed its balance at time of trial was "$4,000 plus whatever dividends and interest they've earned over the past two years." Thus, it appears there may have been some $2,250 that may have been awarded to no one.[5]

The trial court's failure to make the specific findings requested by Mitchell's lawyer regarding disbursals "1," "6," and "8" materially interferes with our review of the trial court's apportionment of property. Meaningful review will be possible only when the trial court makes a finding on whether the $16,600 deposited in the Marine account thereupon became marital property, and whether the mutual funds, Honni's IRA, and Mitchell's IRA were, at time of trial, marital property or separate, nonmarital property.

We therefore reverse the portions of the judgment affecting property (including Mitchell's "retirement pay") and remand the case to the trial court with a directive to make findings on the property issues specified by Mitchell's lawyer at the conclusion of the evidence. We acknowledge that some of

4. Honni testified she had been "living off" that account for several months and it no longer existed.

5. Paragraph "B" of the judgment, quoted earlier, awards Honni "the IRA Account listed in the name of [Mitchell] only in the amount of $1750.00." That provision suggests the trial

court may have believed only $1,750 was in Mitchell's IRA. If, as Honni testified, Mitchell's IRA had a balance exceeding $4,000, it is impossible to determine whether the trial court meant to award the entire account to Honni, or whether the court meant to award Honni only $1,750, leaving the excess for Mitchell.

the issues were imprecisely framed. All we expect of the trial court is that it make findings on those issues as the trial court comprehends them.

In carrying out that task, the trial court will no doubt be aware that § 452.330.1, RSMo 1994, mandates a two-step process in apportioning property. *In re Marriage of Steele*, 844 S.W.2d 104 (Mo.App. S.D.1992). The trial court must first set apart to each spouse his or her non-marital property; then, the trial court must divide the marital property. *Id.* at 104[1].

Consequently, on remand the trial court should identify each party's separate, non-marital property and set it apart to the proper party. The trial court should then divide the marital property in compliance with § 452.330. In distinguishing between non-marital and marital property, the trial court can find aid in subsections 2, 3 and 4 of § 452.330. Perhaps counsel can assist the trial court in ensuring that the new decree accurately describes and specifically disposes of all items of property.

Because we cannot forecast how the trial court will apportion the property, we must also reverse the portions of the judgment assigning debts.

We next consider Mitchell's complaint about the maintenance award. One of the conditions precedent to a maintenance award is a finding by the trial court that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to him (or her), to provide for his (or her) reasonable needs. § 452.335.1(1), RSMo 1994; *Moritz v. Moritz*, 844 S.W.2d 109, 116[10] (Mo.App. W.D.1992).

Because we cannot predict what property, marital and nonmarital, the trial court will apportion to Honni on remand, we cannot engage in meaningful review of the existing maintenance award. Accordingly, the maintenance award must be reversed. On remand, after setting apart to each spouse his non-marital property and dividing the marital property, the trial court shall consider the maintenance issue anew, making findings on the issues specified by Mitchell's lawyer pertinent to maintenance. In deciding the main-

tenance question, the trial court can find aid in § 452.335.

Our reversal of the maintenance award should not be understood as a suggestion that no maintenance is warranted. We express no view on that issue. On remand, maintenance is an open question.

One loose end remains. In the argument portion of his brief, Mitchell complains about the attorney fee awarded Honni's lawyer. However, none of the three points relied on in Mitchell's brief mentions the attorney fee.

The questions for decision on appeal are those stated in the points relied on; a question not there presented will be considered abandoned. *Pruellage v. De Seaton Corp.*, 380 S.W.2d 403, 405[3] (Mo.1964); *Greene County Concerned Citizens v. Board of Zoning Adjustment of Greene County*, 873 S.W.2d 246, 255[3] (Mo.App. S.D.1994). Issues to which an appellant alludes only in the argument portion of his brief are not presented for review. *Berger v. Huser*, 498 S.W.2d 536, 539[2] (Mo.1973); *Greene County Concerned Citizens*, 873 S.W.2d at 255[4]. Accordingly, we do not consider Mitchell's protest about the attorney fee award.

The portions of the judgment pertaining to maintenance, apportionment of property, and assignment of debts are reversed, and the cause is remanded to the trial court for further proceedings regarding those issues in compliance with this opinion. The remainder of the judgment is affirmed. Costs of this appeal are taxed half against Honni and half against Mitchell.

PREWITT, P.J., and SHRUM, C.J., concur.