Clark CAMPBELL and Alice Campbell, Respondents,

v.

CITY OF COLUMBIA, Missouri, a Municipal Corporation, Kenneth L. Stevens, Chairman of Columbia Board of Adjustment, Liz Schmidt, Member of Columbia Board of Adjustment, Peter Bartok, Member of Columbia Board of Adjustment, Darwin A. Hindman, Jr., Member of Columbia Board of Adjustment, and Bruce Beckett, Member of Columbia Board of Adjustment, Respondents/Appellants,

and

Woodridge Homeowners Association, an unincorporated association of homeowners owning homes in the various blocks of Woodridge Subdivision, Columbia, Boone County, Missouri; Elliott E. Farmer, Jr., William D. Eckhoff, Michael K. Farmer and Frank Twehouse, d/b/a Landco Investments, a Missouri General Partnership; and L.D. Schoengarth and Daz Schoengarth, husband and wife, Intervenors/Appellants.

Nos. WD 44315, WD 44316.

Missouri Court of Appeals, Western District.

Dec. 17, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1992.

Application to Transfer Denied March 24, 1992.

Susan Gum Crigler, Columbia, for respondents/appellants.

David B. Rogers, Columbia, for intervenors/appellants.

Thomas M. Schneider, Columbia, for respondents.

Before KENNEDY, P.J., and FENNER and BRECKENRIDGE, JJ.

FENNER, Judge.

Appellants appeal from a judgment of the trial court reversing the Columbia, Missouri Board of Adjustment's denial of a conditional use permit to respondent, Clark Campbell.[1] Campbell was denied a conditional use permit for a ready-mix concrete plant on property owned by him in Columbia, Missouri. Upon appeal, the trial court reversed the decision of the Zoning Board of Adjustment and directed that the conditional use permit be approved.

Appellants' first point is dispositive herein. In their first point, appellants argue that the trial court erred in reversing the Zoning Board of Adjustment's decision be-

---

1. Respondent Alice Campbell, Clark Campbell's wife, is now deceased and therefore no longer a party.

cause the Board's decision was authorized by ordinance and supported by competent and substantial evidence.

■ The scope of judicial review of a board of adjustment decision is limited to determining whether the decision was authorized by law and supported by competent and substantial evidence upon the record. *Huff v. Board of Adjustment of City of Independence*, 695 S.W.2d 166, 167 (Mo.App.1985). A reviewing court cannot substitute its judgment for that of the Zoning Board of Adjustment. *Lorenz v. City of Florissant*, 787 S.W.2d 776, 777 (Mo. App.1990). In reviewing for substantial evidence to support the decision of the Zoning Board of Adjustment, the evidence is viewed in the light most favorable to the board, giving it the benefit of all reasonable inferences. *Id.* If the result reached could reasonably have been reached, a reviewing court is without authority to disturb the finding unless it was clearly contrary to the overwhelming weight of the evidence. *Id.*

Chapter 29 of the Code of Ordinances of Columbia, Missouri contains the zoning ordinances of the City (hereinafter zoning regulations). Respondent applied to the Zoning Board of Adjustment for a conditional use permit to allow a concrete plant on land owned by him and zoned M–1.

Section 29–23(a) of the zoning regulations provides that conditional use permits may be granted only for the uses expressly listed in the conditional use subsections of the zoning districts established in Chapter 29. Section 29–23(b)(3) provides that the Zoning Board of Adjustment may grant a conditional use permit if the following criteria are met:

a. The proposed conditional use is in compliance with all regulations of the applicable zoning district.

b. The proposed conditional use will be in conformance with the character of the adjacent area, within the same zoning district, in which it is located. In making such a determination, consideration may be given to the location, type and height of buildings or structures and the type and extent of landscaping and screening on the site.

c. Off-street parking and loading areas are provided in accordance with the standard set forth in section 29–30.

d. Adequate utilities, drainage, and other such facilities are provided.

e. Adequate access is provided and is designed to prevent traffic hazards and minimize traffic congestion.

Section 29–20 of the zoning regulations addresses District M–1, general industrial district. Section 29–20(c) specifically allows for the issuance of a conditional use permit for the manufacturing, compounding or processing of hazardous materials within District M–1. The evidence in the case at bar showed that the operation of the plant in question would involve a processing and manufacturing function which dealt with hazardous materials. Therefore, respondent's application for a conditional use permit was as permitted under Section 29–20(c) of the zoning regulations.

■ In passing on an application for a conditional use permit, a zoning board acts strictly in an administrative capacity in the exercise of discretionary power delegated by the city legislative body to enforce conditional use permit regulation. *State ex rel. Crouse v. City of Savannah*, 696 S.W.2d 346, 347 (Mo.App.1985). The standards under which the board operates must be sufficiently definite and clear that the discretion to grant or deny the permit is limited. *Erigan Co., Inc. v. Town of Grantwood Village*, 632 S.W.2d 495, 498 (Mo.App.1982). The standards set forth under Section 29–23(b)(3) of the zoning regulations of the City of Columbia meet this criteria.

The Zoning Board of Adjustment had authority to pass on respondent's application for a conditional use permit.

Section 29–23(b)(3)a. of the zoning regulations directs that the proposed conditional use must be in compliance with all regulations of the applicable zoning district. Section 29–20 provides that the uses otherwise allowed in District M–1 are prohibited if noxious or offensive by reason of vibration, noise, odor, dust, smoke, or gas.

■ The evidence, considered in the light most favorable to the denial of respon-

dent's application, was sufficient to show noise and dust pollution as appropriate for consideration under Section 29–20 of the zoning regulations, inadequate drainage as appropriate for consideration under Section 29–23(b)(3)d. of the zoning regulations, and traffic hazards as appropriate for consideration under Section 29–23(b)(3)e. of the zoning regulations.

The property in question is in the general vicinity of commercial, industrial, agricultural and residential development and zoning. The residential development in closest proximity is the Woodridge Subdivision which is approximately 3,300 feet west of the cite in question.

Respondent, Clark Campbell, proposed to build the ready-mix concrete plant within 50 feet of Hominy Creek. The evidence showed that Hominy Creek runs along the southeast corner of the subject property and flows southwest from the subject property through property zoned for agricultural use and along the south and southeastern border of Woodridge Subdivision.

In regard to noise and dust pollution, there was evidence to show that the loading of concrete trucks created significant noise. The evidence also showed that there would be a significant noise impact from the proposed plant due to the increase in heavy truck traffic in the vicinity of the plant. There was also evidence presented to show that as the concrete trucks return from construction sites, they carry dirt and mud with them that accumulates at the plant site and results in significant dust pollution.

In regard to inadequate drainage, the evidence showed that the subject property is located adjacent to Hominy Creek and also in a flood plain. There was evidence that approximately nine hazardous chemicals are used in the processing of cement and that there was reason for concern over the effect upon Hominy Creek from the potential for these chemicals to flow into Hominy Creek from run off and flooding.

In regard to traffic hazards, there was evidence presented to show that the proposed plant site would be accessed by I–70 Drive Southeast which intersects to the east with St. Charles Road and to the west with Highway 63. I–70 Drive Southeast was shown to be 18 to 19 feet wide, with broken edges, without shoulders and with a six foot dropoff from the side of the road. There is also a narrow bridge on I–70 Drive Southeast just a few hundred feet from the proposed plant site. St. Charles Road was described as narrow, deteriorating, and not able to withstand additional heavy truck traffic. The intersection of I–70 Drive Southeast and Highway 63 was shown to be one of the busiest intersections in Columbia and it was reportedly within the top five intersections in Columbia in terms of the number of traffic accidents.

The denial of respondent's application for a conditional use permit by the Zoning Board of Adjustment was supported by competent and substantial evidence on the whole record. The trial court erred by holding otherwise.

The judgment of the trial court is reversed and this cause is remanded with directions to enter judgment consistent with this opinion.

All concur.