**OUTCOM, INC., Plaintiff/Appellant,**

v.

**CITY OF LAKE ST. LOUIS,
Defendant/Respondent.**

No. 74337.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 4, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 23, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Dana Hockensmith, Emily C. Aschinger, Weier, Hockensmith & Sherby, P.C., St. Louis, for appellant.

Jay A. Summerville, Ann E. Buckley, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for respondent.

## OPINION

JAMES R. DOWD, Presiding Judge.

This case now makes its second appearance before this Court. In a prior appeal, we held that an ordinance of the City of Lake St. Louis ("City") was invalid to the extent that it regulated the size, lighting, and spacing of off-premises advertising signs because the regulations conflicted with customary use as defined in section 226.540. *Outcom, Inc. v. City of Lake St. Louis,* 960 S.W.2d 1, 4–5 (Mo.App. E.D. 1996). We declined to rule on the validity of regulations contained in the ordinance pertaining to setbacks for signs because the parties failed to brief the issue of whether these regulations complied with section 226.540.7 and because the trial court failed to apply the three-part test necessary to validate these regulations. Instead, we remanded the cause "to give the parties the opportunity to present evidence and for the court to determine the validity of the other provisions under the three part test of section 226.540.7." *Id.* After the case was remanded, the City repealed the ordinance at issue; however, both parties continued to litigate the matter and filed motions for summary judgment, and the trial court granted summary judgment in favor of the City based on an ordinance adopted subsequent to remand. Outcom, Inc. ("Outcom") appeals that judgment. Vacated and remanded for dismissal.

### Factual Background

In June 1994, Outcom applied to the City for permits to erect eight signs on sites along I–70. Along with the permit applications, Outcom notified the City that the City's current sign ordinance, which

prohibited all off-premises advertising signs, conflicted with *National Advertising Co. v. Missouri State Highway & Transportation Commission,* 862 S.W.2d 953 (Mo.App. E.D.1993), and was therefore invalid. On July 5, 1994, the City repealed this ordinance and enacted Ordinance 962. Ordinance 962 permitted off-premises advertising signs subject to various regulations regarding size, spacing, lighting, and setbacks. Upon learning of the adoption of Ordinance 962, Outcom concluded that none of the sign locations could be used for off-premises advertising signs under the terms of the new ordinance.

On July 13, 1994, Outcom filed a declaratory judgment action to determine whether Ordinance 962 was valid under the Missouri Billboards Act, secs. 226.500–.600.[1] While the action was pending, the City denied Outcom's permit applications. The denial was based in part upon Outcom's failure to satisfy Ordinance 962's regulations concerning setbacks, safety clearances, and heights. On November 1, 1995, the trial court entered judgment in favor of the City, concluding that Ordinance 962 was valid under section 226.527.4 and that its regulations were reasonable. In an appeal filed by Outcom, this Court held that the City could only adopt regulations consistent with section 226.540 and that Ordinance 962 contained regulations as to size, lighting, and spacing which did not conform to section 226.540. Because the record was insufficient to determine the validity of the other regulations, we remanded for a determination of whether the remaining regulations satisfied the three-part test contained in section 226.540.7.

On the City's motion, the case was transferred to the Supreme Court of Missouri. Shortly before the case was heard, the General Assembly enacted House Bill 831, now codified at section 71.288 RSMo Cum.Supp.1997, which provides as follows:

1. Any city that maintains the city engineer or other similar city official on the planning commission shall have the authority to place any restriction upon the height, spacing and lighting of outdoor advertising structures placed within the view of any highway within the city. Such ordinance may be more restrictive than sections 226.500 to 226.600, RSMo.

2. No city that elects to govern outdoor advertising structures as provided in subsection 1 shall have the authority to impose a fee of more than five hundred dollars for the initial inspection of an outdoor advertising structure, nor may the city impose a business tax on an outdoor advertising structure of more than one hundred dollars per year.

After the General Assembly enacted the bill, the supreme court retransferred the case without opinion. This Court then reissued its prior opinion which was mandated on July 14, 1997. On the same date, House Bill 831 was signed into law, to become effective on August 28, 1997.

The following relevant events transpired after the case was remanded to the trial court. On July 21, 1997, the City adopted two ordinances in response to House Bill 831: Ordinance 1206, which named the City Engineer to the City Planning and Zoning Commission and Ordinance 1207, which reduced the business tax on outdoor advertising structures to $100 per year. On August 18, 1997, the City repealed Ordinance 962 and adopted Ordinance 1213. Ordinance 1213 prohibited the erection of off-premises advertising signs within 5,280 feet of an existing sign on the same side of the highway and required new signs to be positioned at least 1,000 feet from residential and public areas and interchanges. On November 17, 1997, the City adopted Ordinance 1238 to amend Ordinance 1213 by reducing the required space between existing signs on the same side of the highway to 1,000 feet.

On December 29, 1997, the City filed a motion for summary judgment arguing that its billboard regulations were authorized by House Bill 831 and that none of Outcom's eight sites was in use for bill-

1. All statutory references are to RSMo 1994  unless otherwise indicated.

board purposes at the time the legislation and ordinances were adopted. On February 5, 1998, Outcom filed a motion for summary judgment, arguing that this Court's mandate limited the trial court's jurisdiction to determining whether Ordinance 962 complied with the three-part test contained in section 226.540.7. On March 16, 1998, while the motions for summary judgment were pending, the City enacted Ordinance 1286. Ordinance 1286 reenacted and reaffirmed the City's regulations of billboards set forth in Ordinance 1213, as amended by Ordinance 1238. On March 19, 1998, the City notified the trial court of the enactment of Ordinance 1286 by filing a Supplement to Defendant's Motion for Summary Judgment and Defendant's Response to Plaintiff's Motion for Summary Judgment. On April 20, 1998, the trial court entered summary judgment in favor of the City and against Outcom. This appeal follows.

## Standard of Review

■ When reviewing an appeal of a grant of summary judgment, we view the evidence in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.*

## Analysis

■ Because Outcom's second point of error is jurisdictional, we consider it out of order. In this point, Outcom claims that the trial court's judgment exceeded the mandate of this Court and is null and void because the only issue within its jurisdiction was to determine the validity of certain regulations contained in Ordinance 962. We agree.

■ The jurisdiction of the trial court on remand is determined by the mandate and opinion of the appellate court. *Pinkston v. Ellington*, 845 S.W.2d 627, 629 (Mo.App. E.D.1992); *Davis v. J.C. Nichols Co.*, 761 S.W.2d 735, 737 (Mo.App. W.D. 1988). A remand with directions limits the trial court to enter a judgment in conformity with the mandate. The trial court is without power to modify, alter, amend, or otherwise depart from the appellate judgment, and any proceedings contrary to the directions of the mandate are null and void. *Davis*, 761 S.W.2d at 737. In contrast, a general remand is one without specific directions and leaves all issues open to consideration on the new trial. *Pinkston*, 845 S.W.2d at 629. A general remand has the effect of a direction to proceed in accordance with the holdings entered by the opinion of the appellate court as the law of the case. *Pinkston*, 845 S.W.2d at 629; *Davis*, 761 S.W.2d at 737–38.

In the prior appeal, we "remanded to give the parties the opportunity to present evidence and for the court to determine the validity of the other provisions [of Ordinance 962] under the three part test of section 226.540.7." *Outcom*, 960 S.W.2d at 4–5. We view this language as a remand with directions. Therefore, the trial court was bound to follow the instructions of the mandate and any proceedings contrary to the directions are null and void.

■ It is clear from the judgment that the trial court believed the City's repeal of Ordinance 962 mooted the question of whether the ordinance complied with section 226.540.7; however, this does not necessarily follow. The City's repeal of Ordinance 962 cannot destroy a vested or equitable right to the permits. Thus, if Outcom acquired a vested or equitable right to the permits when Ordinance 962 was in effect, then Ordinance 962 must be applied in this case.

### A. Vested Right

■ Outcom maintains that it acquired a vested right to erect signs on the proposed sites by taking all action it legally could to begin construction. According to Outcom, it took the following action in reliance on the invalidity of the City's ordinance. After investigating possible sign locations, Outcom purchased or leased several tracts of land situated along I–70. Outcom commissioned an engineering company to prepare site surveys showing the boundaries of the sites and where the proposed signs would be erected. Outcom applied for and received state permits for the sites and applied for City permits for the sites. Outcom also ordered a sign to be erected on one of the sites, but the sign apparently was never erected. Outcom had, or could have acquired, all of the material necessary to erect all of the signs, and all of the signs could have been erected within sixty days after the issuance of permits.

■ The question we must decide requires a proper understanding of the law of zoning, and in particular, the nonconforming use doctrine. Under the nonconforming use doctrine, zoning restrictions adopted by a municipality may not be applied so as to require the removal or cessation of an established use of land—a use which does not conform with a use authorized by the zoning restriction. *State ex rel. Drury Displays, Inc. v. City of Shrewsbury,* 985 S.W.2d 797, 800 (Mo.App. E.D.1998). The theory underlying the doctrine is that applying new zoning restrictions to established uses of land would amount to depriving a landowner of property without due process of law and would constitute a taking of private property without just compensation. *Id.*

■ The precise issue involved in this case is how far must landowners go towards establishing a use of land before they acquire a vested right in the continued use of the land which is protected from a zoning ordinance prohibiting such a use. It is well established that a nonconforming use which predates the effective date of a zoning ordinance is protected from future regulation. Such a use is characterized as an "existing" or "lawful" nonconforming use. The difficult question occurs when land is in the process of being converted to a particular use and then a zoning ordinance is adopted that prohibits the use. Whether the use is considered to "exist" depends on how far work on the conversion has progressed. A landowner's mere intention or plan to use land for a particular purpose, receipt of a permit, or purchase or lease of land in reliance on existing zoning laws does not give rise to a vested right. *Drury Displays,* 985 S.W.2d at 800; *In re Coleman Highlands,* 777 S.W.2d 621, 624 (Mo.App. W.D.1989). If the work completed towards converting the land is substantial in nature as opposed to merely preliminary, the landowner has a nonconforming use and has a vested right to continue in the nonconforming use. *State ex rel. Great Lakes Pipe Line Co. v. Hendrickson,* 393 S.W.2d 481, 484 (Mo.1965) (finding a nonconforming use based on landowner's acquisition of site, completion of a portion of the structure, and expenditure of over $64,000 prior to the adoption of zoning ordinance where municipality's attorney had previously assured landowner no such ordinance was contemplated). Whether or not a landowner has acquired a vested right to a nonconforming use when the nonconforming use does not predate the zoning ordinance is determined on a case-by-case basis.

We conclude that Outcom acquired no vested right in a nonconforming use. Unlike the landowner in *Great Lakes Pipe Line,* when Outcom applied for the sign permits, a City ordinance prohibited all off-premises advertising signs. Although Outcom claims the ordinance is invalid, so far as the record shows the ordinance was never legally challenged and therefore is presumed valid and lawful. *McCollum v. Director of Revenue,* 906 S.W.2d 368, 369 (Mo. banc 1995). Nor did Outcom acquire a vested right when Ordinance 962 was in effect. Although this Court invalidated the size, lighting, and spacing regulations

of Ordinance 962, no determination was made as to the validity of the setback requirements. Inasmuch as Outcom does not claim that its signs would have satisfied the setback requirements of Ordinance 962, Outcom did not acquire a vested right in a nonconforming use prior to the repeal of Ordinance 962.

## B. Equitable Right

■ Outcom also argues that the City should be compelled to grant the sign permits because the City discriminatorily enacted Ordinance 962 as well as subsequently adopted ordinances to deprive Outcom of the intended use of its land. As stated in Outcom's brief:

> The City did not adopt Ordinance 962 (which Ordinances 1213, 1238 and 1286 mirror and extend) until it had received Outcom's permit applications, knew the location of the proposed signs, and discovered the inability of its current ordinance to prevent the proposed use. The City's adoption of Ordinance 962, and then its denial of the sign permits based upon that ordinance, strongly suggest that Ordinance 962 was aimed at Outcom, to specifically prevent Outcom's proposed signs. The adoption of Ordinances 1213, 1238 and 1286 merely continue the discriminatory denial of Ordinance 962.

In support of this argument, Outcom directs us to *State ex rel. Casey's General Stores, Inc. v. City of Louisiana,* 734 S.W.2d 890 (Mo.App. E.D.1987). The court summarized the case as follows:

> The dispute stems from the enactment of a zoning ordinance for the City of Louisiana which declared the site where Casey's intended to build a new convenience store to be part of a residential area. At the time the ordinance was passed, May 2, 1983, Casey's had already bought the lot on which the store was to be placed and was in the process of obtaining the necessary licenses. Prior to May of 1983, there had been no zoning ordinance in effect in the City of Louisiana.

*Casey's General Stores,* 734 S.W.2d at 893. In addition, there was evidence that Casey's notified city officials of its planned development and was assured that nothing would prevent the operation of the store on any property acquired. *Id.* at 896. On this basis, the court of appeals held the city should be equitably estopped from denying Casey's a building permit.

*Casey's General Stores* is of no assistance to Outcom. As previously noted, Outcom's proposed development has been unlawful under every billboard ordinance enacted by the City prior to Outcom's application to the present. Moreover, Outcom's failure to comply with a presumably valid and controlling ordinance severely undercuts its equitable claim. Additionally, in contrast to *Casey's General Stores,* the City never gave Outcom any assurance that it would acquiesce in Outcom's development. Therefore, in the absence of some material evidence (besides Outcom's mere allegation) that the City harbored a discriminatory motive in amending its billboard ordinance, *see, e.g., May Dep't Stores Co. v. County of St. Louis,* 607 S.W.2d 857 (Mo.App. E.D.1980), we conclude the City acted within its police powers to ensure that its regulations comported with the law. *See Drury Displays,* 985 S.W.2d at 800. Under these circumstances, Outcom acquired no equitable right to the sign permits.

## Conclusion

Outcom acquired neither a vested right nor an equitable right to the sign permits. The City's repeal of Ordinance 962 mooted the issue specifically remanded to the trial court in the prior appeal, thereby making compliance with the mandate impossible. The trial court exceeded its jurisdiction by considering issues beyond the scope of the directions of the mandate. Accordingly, we vacate the judgment and remand the case with instructions to dismiss the action for lack of subject matter jurisdiction.

LAWRENCE G. CRAHAN, J., and RICHARD B. TEITELMAN, J., concur.