Greg & Terri WOLFNER, Respondents,

v.

**BOARD OF ADJUSTMENT OF
THE CITY OF WARSON
WOODS, Appellant.**

No. ED 81434.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 17, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 13, 2003.

Application for Transfer Denied
Sept. 30, 2003.

Paul V. Rost, St. Louis, MO, for appellant.

David M. Stolze, Clayton, MO, Daniel R. Schramm, Chesterfield, MO, for respondent.

Before MARY R. RUSSELL, P.J., CLIFFORD H. AHRENS, J., and BOOKER T. SHAW, J.

BOOKER T. SHAW, Judge.

Appellant, the Board of Adjustment of the City of Warson Woods ("the Board"), appeals from the trial court's judgment reversing the Board's denial of a zoning variance to respondents, Greg and Terri Wolfner ("the Wolfners"). We find the Board's third point on appeal dispositive

and reverse and remand with directions for the trial court to enter judgment consistent with this opinion.

In 1939, Mr. Willard Trower purchased a home located on a lot at 1659 Dearborn for $8,500 ("Principal Lot"). In 1941, what is now the City of Warson Woods, adopted the current and applicable zoning regulations.[1] Although the Principal Lot did not meet the minimum area and width requirements for a residential family dwelling under the new zoning regulations, it was exempted under the lawful nonconforming use exemption because Mr. Trower's home had been built prior to the enactment of the regulations. In 1945, Mr. Trower purchased the lot adjacent to the Principal Lot at 1657 Dearborn for $100 ("Side Lot"), which also did not meet the minimum area and width requirements of the zoning regulations for a residential family dwelling. In the late 1980's early 1990's, Mr. Trower added his wife, Mrs. Joyce Ann Trower's name to the titles of both lots. Subsequently, Mr. Trower died and Mrs. Trower acquired sole title to both the Principal Lot and the Side Lot.

From 1945 to 1995, the Side Lot was used solely as a sideyard by the Trowers. In 1995, Mrs. Trower sold the Principal Lot, but retained ownership of the Side Lot. The purchaser of the Principal Lot attempted to purchase the Side Lot along with the Principal Lot from Mrs. Trower, but she rejected the offer. Likewise, individual and joint attempts were made by the adjacent property owners to purchase the Side Lot. Nonetheless, Mrs. Trower rejected all of these offers.

On May 5, 1997, Mrs. Trower requested a zoning variance from the Board so that she could sell the Side Lot to a homebuilder. The Side Lot was located in Residential District "B." Section 415.020(B)(4) of the zoning regulations provides:

> Every family dwelling hereafter erected or structurally altered in the "B" Residence District shall provide a lot area of not less than eight thousand seven hundred fifty (8,750) square feet, and that no lots shall have an average width at the building line of less than seventy (70) feet.

Warson Woods, MO, Code of Ordinances, Title IV, Section 415.020(B)(4) (1995). However, the Side Lot is only 7,500 square feet in area and 60 feet in width. After a hearing, the Board issued written findings of fact, denying Mrs. Trower's variance request. One of the Board's reasons for denying Mrs. Trower's variance request was that the Board believed she had created the practical difficulty of which she complained by not selling the Side Lot along with the Principal Lot. Mrs. Trower appealed to the circuit court, which affirmed the Board's denial. Mrs. Trower did not appeal the circuit court's judgment.

On January 19, 1998, the Wolfners entered into a residential sales contract with Mrs. Trower for the purchase of the Side Lot. The sales contract included an addendum which expressly provided that the contract is contingent upon the

> [p]arties receiving [the] necessary written approval from the City of Warson Woods or [t]he Circuit Court of St. Louis County, including [a] variance for lot frontage and lot size, by approving the lot as a buildable lot. If within 90 days after contract acceptance [the Wolfners] are not completely satisfied ... this contract may be declared null and void with earnest money refunded.

On February 24, 1998, the Wolfners applied for a building permit for the Side Lot. On March 3, 1998, the building com-

---

1. Codified as Title IV of the City of Warson Woods Code of Ordinances (1995).

missioner denied their application because of the Side Lot's failure to meet the minimum zoning requirements.[2] On April 8, 1998, the Wolfners, acting as agents for Mrs. Trower, applied to the Board for a zoning variance. Subsequently, in a letter dated April 21, 1998, the City Attorney for the City of Warson Woods informed the Wolfners, that "if [they] purchase[d] or otherwise [took] fee title to the property, they [would be] do[ing] so with full knowledge that the Side Lot fails to meet the area and width requirements of the City's zoning code and, thus, is not suitable for a residential structure." Nevertheless, the Wolfners purchased the Side Lot from Mrs. Trower and title to the property was transferred to them by quitclaim deed on May 28, 1998. On December 1, 1998 a hearing was held on the Wolfners' zoning variance request and the following day, the Board denied the Wolfners' request and issued findings of fact in support of their decision.

Subsequently, the Wolfners filed a Petition for Writ of Certiorari in the Circuit Court of St. Louis County to review the Board's denial of their zoning variance for the Side Lot. The trial court reversed the decision of the Board and directed the Warson Woods Building Commissioner and the Board to grant the Wolfners a zoning variance. The Board appealed to this Court and we reversed and remanded the case to the trial court to determine whether the Petition for Writ of Certiorari was barred by the statute of limitations for failure to exercise due diligence in giving notice to the abutting property owners. *Wolfner v. Board of Adjustment of City of Warson Woods*, 39 S.W.3d 76, 78 (Mo.App.

E.D.2001). Thereafter, the Wolfners notified each of the four abutting landowners of the Petition for Writ of Certiorari by certified mail. On remand, the trial court determined that the Wolfners had served the abutting landowners such that the statute of limitations was not implicated and again directed the Warson Woods Building Commissioner and the Board to grant the Wolfners a zoning variance. The Board appeals from this judgment.

The Board raises six points on appeal. In its third point, the Board argues the trial court erred in reversing the Board's decision to deny the Wolfners a zoning variance because it was based on substantial and competent evidence on the whole record and that the Board did not abuse its discretion. We agree. Because we find the Board's third point dispositive, we do not address the Board's other points on appeal.

■ "On appeal, we review the findings and conclusions of the Board, not the judgment of the circuit court." *Raskin v. City of St. Louis*, 87 S.W.3d 911, 912 (Mo. App. E.D.2002). The scope of our review of a board of adjustment decision is limited to determining whether the decision was authorized by law and supported by competent and substantial evidence upon the whole record. *Id.* We cannot substitute our judgment for that of the Board of Adjustment. *Campbell v. City of Columbia*, 824 S.W.2d 47, 49 (Mo.App. W.D. 1991). We view the evidence in the light most favorable to the Board's decision, giving it the benefit of all reasonable inferences. *Id.* If the result reached by the Board could reasonably have been

2. As already stated, the Side Lot fails to meet the minimum area and width requirements for construction of a new family dwelling. Further, because the addition to the Principal Lot of a garage and screened porch by the Trowers in 1940, the home on the Principal Lot is located only 3 feet and 7 inches from the Side Lot's property line, which is less than the 10–foot distance required by the zoning regulations to ensure at least a 20–foot separation between buildings.

reached, we are without authority to disturb the Board's finding unless it was clearly contrary to the overwhelming weight of the evidence. *Id.*

■ In *Campbell*, 824 S.W.2d at 49, the court, in affirming the Board's denial of a conditional use permit to build a concrete plant, held that a zoning board acts strictly in an administrative capacity in the exercise of discretionary power delegated to it by the city legislative body to enforce zoning regulations. "The granting of a variance ... is an authorized act of discretion on the part of the administrative board where indicated by special circumstances which justify the alleviation of hardship." *Wolfner v. Board of Adjustment of City of Frontenac*, 672 S.W.2d 147, 150 (Mo.App. E.D.1984).

■ In order to limit the discretion to grant or deny a building permit, the standards under which the board operates must be sufficiently definite and clear. *Campbell*, 824 S.W.2d at 49. In this case, the standards set forth under Section 410.030 of the zoning regulations of the City of Warson Woods meet that criteria. Section 410.030(7) provides that the Board of Zoning Adjustment has the authority

> [t]o authorize upon appeal, whenever a property owner can show that a *strict application* of the terms of this Title *relating to the construction or alteration of buildings or structures or the use of land will impose upon him/her practical difficulties or unnecessary hardship*, such variations of the strict application of the terms of this Title as are in harmony with its general purpose and intent but only when the Board is satisfied that a granting of *such variation will not merely serve as a convenience to the applicant, but will alleviate some practical difficulty or unnecessary hardship* so great as to warrant a variation from the comprehensive plan as es-

> tablished by this Title, and at the same time the surrounding property will be properly protected.

Warson Woods, MO, Code of Ordinances, Title IV, Section 410.030(7) (1995) (emphasis added).

■ "The zoning powers vested in charter counties such as St. Louis County by the Missouri Constitution, Art. VI, Section 18(c), are designed to promote public safety and welfare." *Hutchens v. St. Louis County*, 848 S.W.2d 616, 619 (Mo. App. E.D.1993); *see also St. Louis County v. City of Manchester*, 360 S.W.2d 638, 642 (Mo. banc 1962). Therefore, such counties should exercise their power to grant a variance sparingly and in accordance with the public welfare. *Hutchens*, 848 S.W.2d at 619. Section 89.090, RSMo 2000, describes the powers of boards of adjustment. Subdivision 1(3) of this Section provides that a variance may be granted:

> [w]here there are *practical difficulties or unnecessary hardship* in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance *relating to the* use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done....

Section 89.090, RSMo 2000 (emphasis added).

■ The distinction between the "practical difficulties" standard and the "unnecessary hardship" standard of Section 89.090, RSMo 2000, is that "[t]he 'practical difficulties' standard ... is applied in obtaining area or non-use variances, whereas the slightly more stringent standard of an 'unnecessary hardship' is applied in obtaining use variances." *State ex rel. Branum v. Board of Zoning Ad-*

*justment of City of Kansas City, Mo.*, 85 S.W.3d 35, 40 (Mo.App. W.D.2002). "As the name implies, a use variance is one which permits a use other than one permitted by the zoning ordinance," whereas "[a] non[-]use variance permits deviations from restrictions which relate to a permitted use, rather than limitations on the use itself." *Housing Authority of the City of St. Charles, Mo. v. Board of Adjustment of the City of St. Charles, Mo.*, 941 S.W.2d 725, 727 (Mo.App. E.D.1997). Some examples of such deviations requiring a non-use variance include "height and size of buildings, lot size, and yard requirements." *Id.*

■■■ Here, the appeal before the Board sought a non-use variance. As a prerequisite to obtaining a non-use variance, it is the applicant's burden to show that a strict enforcement of a zoning limitation would cause practical difficulties. *One Hundred Two Glenstone, Inc.*, 572 S.W.2d at 893–94. Although no Missouri case law recites a precise definition for the term "practical difficulties," a non-use variance applicant must at the very least show that as a practical matter the property cannot be used for a permitted use without coming into conflict with the restrictions contained in the ordinances. *Slate v. Boone County Bd. of Adjustment*, 810 S.W.2d 361, 364 (Mo.App. W.D.1991). "Further, the practical difficulty relied on as a ground for a variance must be 'unusual or peculiar to the property involved and must be different from that suffered throughout the zone or neighborhood.'" *Behrens v. Ebenrech*, 784 S.W.2d 827, 829 (Mo.App. E.D.1990) (quoting *Ogawa v. City of Des Peres*, 745 S.W.2d 238, 242 (Mo.App. E.D.1987)). The determination of whether there are "practical difficulties" warranting the grant of a variance is a factual matter for the Board's resolution and reversible only if the Board abused its discretion in making such a determination. *Hutchens*, 848 S.W.2d at 619.

This Court, in holding that "practical difficulties" refer to the conditions of the land and not conditions personal to the owner, upheld a Board of Adjustment's denial of a zoning variance. *Id.* In *Hutchens*, petitioner failed to obtain a building permit to construct a carport over an existing driveway. *Id.* at 617. The carport stood six inches from the sideyard property line, but was subject to a six-foot setback. *Id.* at 617–18. After being advised that she was in violation of the zoning regulations, petitioner sought a building permit, which was denied. *Id.* at 618. Petitioner then sought a setback variance from the Board of Adjustment, claiming that it cost $8,500 to construct the carport and it would cost approximately $5,000 to tear it down. *Id.* In denying her variance request, the Board held that "petitioner failed 'to establish a hardship upon which a variance request would be necessitated . . . ,' and that the encroachment on the usefulness and enjoyment of her neighbor's property 'far outweigh[ed] the usefulness and the purpose of the carport.'" *Id.* In reaching its decision, the Court reasoned that "the Board did not err in rejecting consideration of petitioner's evidence of personal financial hardship unrelated to any economic impact upon the land." *Id.* at 619.

Likewise, in the case before us, the Board found no evidence of an economic impact on the land itself, only that the Wolfners agreed to pay $80,000 for the Side Lot, with full knowledge that it did not meet the City's minimum residential building requirements. The Board rejected the Wolfners' assertion that the amount paid for the lot was evidence of its fair market value because, by their own admission, their agreement to purchase the Side Lot for $80,000 was contingent upon re-

ceiving the necessary variances in order to get a building permit to build a home on the lot.

Furthermore, there was no evidence presented that the Side Lot could not be used for some other purpose or that it had no value if the Wolfners were not allowed to build a house on it.[3] Additionally, the Board found "no evidence of any change in conditions or differing circumstances related to the [Side] Lot that would warrant the Board's deviation from its prior denial of a variance for this [same] Lot [requested by Mrs. Trower]."

Considering the evidence in the light most favorable to the denial of the Wolfners' petition, it was sufficient to show that the Wolfners failed to meet their burden of proving they would suffer a "practical difficulty" if they were denied a variance. Applying the criteria required by the zoning regulations to obtain a zoning variance, the Wolfners failed to show that a variation from the strict application of the zoning ordinance: (1) was warranted by practical difficulties; (2) would be in harmony with the general purpose and intent of the zoning regulations; (3) would actually alleviate some great practical difficulty and not merely serve as a convenience to them; or (4) would properly protect the property surrounding the Side Lot. *See* Warson Woods, MO, Code of Ordinances, Title IV, Section 410.030(7) (1995).

We find that the Board's denial of the Wolfners' petition for a zoning variance was supported by competent and substantial evidence on the whole record and that the Board did not abuse its discretion in determining that there were no "practical difficulties" warranting the grant of a variance to the Wolfners. Since such a determination is reversible only if the Board abused its discretion in making it, we up-

hold the Board's denial of the Wolfners' petition for a zoning variance. The judgment of the trial court should be reversed and this cause remanded to the trial court with directions to enter judgment consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

MARY R. RUSSELL, P.J., and CLIFFORD H. AHRENS, J., concur.

---

**3.** It is possible the neighboring property owners may still be interested in purchasing the Side Lot at fair market value for its continued use as a side yard.