**VERNA PROPERTIES, L.L.C.,**
Plaintiff/Appellant,

v.

**The BOARD OF ADJUSTMENT OF the CITY OF MARYLAND HEIGHTS,**
Defendant/Respondent.

**No. ED 85748.**

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 21, 2006.

Rehearing Denied April 10, 2006.

Timothy J. Tryniecki, Thomas B. Weaver, Cynthia A. Petracek, Armstrong Teasdale LLP, St. Louis, MO, for Appellant.

Howard Papener, R. Henry Branom, Jr., St. Louis, MO, for Respondent.

## OPINION

MARY K. HOFF, Presiding Judge.

Verna Properties, LLC (Property Owner), appeals the trial court's judgment affirming the Board of Adjustment of the City of Maryland Heights' (Board) decision, which denied Property Owner's application for a variance. We reverse.

### Facts

Property Owner, a commercial snow removal contractor, is the fee simple owner of certain real estate and improvements located within the Redevelopment Manufacturing (RD–M) zoning district of the City of Maryland Heights (City). This site consisted of four parcels of land having a combined area of 1.586 acres and two existing buildings located on separate parcels.

Property Owner sought two variances from the Maryland Heights Zoning Code (Code), one to reduce the minimum required lot size and one to allow an accessory building exceeding the maximum square footage. In its petition requesting the variances, Property Owner alleged these variances were required so that it could consolidate the four tax parcels to bring the overall site into conformity with the City's existing zoning regulations. Property Owner further alleged that this lot consolidation would cause an existing 30–year–old welding building located on one of the parcels to be denominated as an accessory building. Property Owner requested a variance to permit a lot size of 1.586 acres in an area requiring a minimum of 2.5 acres and a variance to allow it to retain the accessory building, which had a floor area of 1,840 square feet where 500 square feet was the maximum square footage allowed.

The Board held a public hearing regarding Property Owner's variance requests on March 1, 2004. Brad Pierce, an employee of Property Owner, testified that Property Owner purchased the accessory building

because its existing welding use fit Property Owner's ongoing needs for welding, heavy equipment repairs, and facility maintenance in its snow removal operations.

Carl Bolm (Bolm), owner and president of Property Owner, also testified during the hearing. Bolm testified that Property Owner has used the accessory building for welding and mechanical services since it initially purchased the property. He further stated that, due to its structure, downsizing the accessory building from 1800 square feet to 500 square feet would be impossible without demolishing the entire building. Bolm explained that they were "tight on space," therefore, the larger building needed to be expanded to accommodate both material usage and equipment storage.

After Property Owner presented its evidence, City's Zoning Administrator and City Administrator testified and presented City's staff report concerning the property. In its staff report, City noted that Property Owner's submitted site development plan indicated that, after a proposed expansion, the larger building would have a floor area of 11,353 square feet, while the accessory building would retain its 1,840 square feet of area. City indicated that granting the variances would have no effect on population density and would place no additional demands on government facilities. City further indicated that granting the variances would neither cause substantial change in the character of the neighborhood nor create a substantial detriment to the neighborhood because the building already existed and the existing lots were already non-conforming for size.

In its report, City conceded that, without the lot consolidation, it was likely that no redevelopment capable of furthering the purpose of the RD–M zoning district could be accomplished at the site. In its

recommendation as to the accessory building, City suggested that the appropriate approach would be to demolish the existing accessory building and to expand the larger building beyond the anticipated floor area, if necessary.

City's report concluded that the proposed redevelopment failed to meet the standard for the redevelopment district, as set forth in the Code, and indicated that approval of the variances would enable an intensity and style of site development that might not be in furtherance of the RD–M zoning standard.

Following the hearing, the Board voted to approve the lot size variance but voted to deny the accessory building variance. Thereafter, Property Owner filed a petition for a writ of certiorari with the trial court, requesting the trial court to reverse the Board's decision to deny the accessory building variance. On December 14, 2004, the trial court entered its judgment affirming the Board's denial of Property Owner's request for the accessory building variance. This appeal follows.

*Discussion*

Property Owner raises one point on appeal, claiming the Board's decision was not supported by substantial evidence on the whole record, was unauthorized by law, and was arbitrary, capricious, and unreasonable, and an abuse of discretion because substantial evidence showed: 1) denial of the variance would result in practical difficulties and unnecessary hardship arising from the unique shape and size of the property; 2) continuation of the pre-existing welding use was necessary to Property Owner's operation; 3) the standards for practical difficulty under state law and City's ordinances were met; and 4) the effect of Property Owner's proposed development would be an enhancement of the industrial neighborhood and

would cause no harm to the health, safety, and welfare of the public.

We review the decision of the Board, not the judgment of the trial court. *State ex rel. Charles F. Vatterott Constr. Co., Inc. v. Rauls,* 170 S.W.3d 47, 50 (Mo. App. E.D.2005). The question before us becomes whether, considering the whole record, the Board's decision: 1) is supported by sufficient competent and substantial evidence; 2) is, for any reason, unauthorized by law; 3) is arbitrary, capricious or unreasonable; or 4) involves an abuse of discretion. *Lagud v. Kansas City Bd. of Comm'rs,* 136 S.W.3d 786, 791 (Mo. banc 2004).

The Code's regulations concerning the RD–M districts defines such districts as being composed of areas exhibiting blighted conditions and states that their principal use should be commercial and light industrial. Maryland Heights Municipal Code Section 25–4.13. The minimum lot area allowed within the RD–M district is 2.5 acres. *Id.* The Code permits detached accessory buildings or structures on the lots within the district, but the combined gross area of all detached accessory buildings and structures cannot exceed 500 square feet. Maryland Heights Municipal Code Section 25–5.3.

As to its request to allow the accessory building to exceed the Code's maximum square footage limitation, Property Owner seeks a non-use variance, that is, one allowing "deviations from restrictions which relate to a permitted use, rather than limitations on the use itself." *State ex rel. Charles F. Vatterott Constr. Co., Inc.,* 170 S.W.3d at 50 (*quoting Wolfner v. Board of Adj. City of Warson Woods,* 114 S.W.3d 298, 303 (Mo.App. E.D. 2003)). To obtain such a non-use variance, Property Owner must show practical difficulties exist preventing it from utilizing the property for a permitted use without being in conflict with existing regulations. *State ex rel. Charles F. Vatterott Constr. Co., Inc.,* 170 S.W.3d at 50. These practical difficulties must be land conditions, not conditions personal to the property owner. *Id.*

Factors relevant to determining whether practical difficulties exist, which justify the grant of a non-use variance, include: 1) how substantial the variation is in relation to the requirement; 2) the effect, if the variance is granted, of any resulting increased population density on available governmental facilities such as water supply; 3) whether a substantial change will be produced in the neighborhood's character or a substantial detriment to the adjoining properties created; 4) whether the difficulty can be obviated by some feasible method other than a variance; and 5) whether in view of the manner in which the difficulty arose and considering all of the above factors the interests of justice will be served by allowing the variance. *Id.* Because the determination of whether practical difficulties exist is a factual matter, we reverse only for an abuse of discretion. *Id.* An abuse of discretion is found where the decision is clearly against the logic of the circumstances before the board and is so arbitrary and unreasonable that it shocks our sense of justice and indicates a lack of careful consideration. *Cousin's Adver., Inc. v. Board of Zoning Adjustment of Kansas City,* 78 S.W.3d 774, 783 (Mo.App. W.D.2002).

Although it is clear that the variance Property Owner seeks is substantial with respect to the maximum square footage allowed by Section 25–5.3 of the City's Code, we find that the remaining factors (2), (3), (4), and (5) favor granting Property Owner's variance request.

As to the second and third factors, City conceded in its report that granting the variance would have no effect on population density, would place no additional demands on available governmental facilities, and would cause no detriment to the neighborhood, as the accessory building already existed.

The fourth factor relevant to determining whether practical difficulties exist which justify granting a non-use variance is whether the difficulty can be obviated by some other feasible method. The physical size and location of the lots give rise to the practical difficulties leading to Property Owner's request for the variances. City agreed that, given the physical characteristics of the site, it was likely that no redevelopment capable of furthering the purpose of the RD–M zoning district could be accomplished absent a variance. City suggested that, as an alternative to granting Property Owner's request for a non-use variance as to the existing accessory building, Property Owner demolish the accessory building and further expand the larger building to accommodate Property Owner's need for welding, heavy equipment repairs, and facility maintenance. Given that Property Owner's proposed development already anticipated a substantial expansion of the larger building to accommodate its needs for material usage and equipment storage, demolishing an existing welding building that adequately meets its needs for welding, heavy equipment repairs, and facility maintenance is not a feasible method. Even assuming the larger building could be further expanded to meet the needs presently served by the welding building, not only would Property Owner be confronted with substantial additional expense, but it is also likely that it would face interruption of the operations it conducts at the welding building.

We find this case to have issues similar to those found in *Karelitz v. Soraghan*, 851 S.W.2d 85 (Mo.App. E.D.1993) and *Housing Authority of the City of St. Charles v. Board of Adjustment of the City of St. Charles*, 941 S.W.2d 725 (Mo.App. E.D. 1997).

In *Karelitz*, this Court affirmed a variance to a hospital from a forty-foot setback to a twenty-foot setback, upholding the Board's finding that the variance would not in any way impair the public health, safety, comfort, and morals of the City of Kirkwood. 851 S.W.2d at 87. In *City of St. Charles*, this Court affirmed the judgment reversing the Board's decision to deny lot size, width and setback variances. This Court found that the unique character of the property and the practical difficulties regarding the development of the property required the grant of variances. 941 S.W.2d at 728.

We conclude that like *Karelitz* and *City of St. Charles*, Property Owner's request for a variance is necessary because of the unique configuration of the property consisting of consolidated irregular lots and the pre-existing building needed for business purposes. We conclude that the Property Owner made a substantial showing of practical difficulty and that the Board abused its discretion in denying the variance requested.

The trial court's judgment and the Board's decision are reversed in accordance with this opinion.

CLIFFORD H. AHRENS and
PATRICIA L. COHEN, Judges, Concur.